IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JAN 19 2017
ARTHUR JOHNSTON
BY_____ DEPUTY

JUANITA NICHOLS                                                       PLAINTIFF

VS.                                                 CIVIL ACTION NO. 3:17cv-42 CWR-FKB

RELIANCE STANDARD LIFE INSURANCE COMPANY
AND PECO FOODS, INC.                                       DEFENDANTS

## COMPLAINT

**COMES NOW**, Plaintiff Juanita Nichols (hereinafter "Plaintiff"), and files this her Complaint arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), to recover benefits under a company sponsored employee Long Term Disability benefit plan, to redress breaches of fiduciary duties under ERISA, and to recover costs and attorneys' fees as provided by ERISA against Defendant Reliance Standard Life and Defendant Peco Foods, Inc. (hereinafter "Defendants").

## PARTIES

1. Plaintiff is an adult citizen of Scott County Mississippi. Plaintiff was a participant in Defendants' Long Term Disability Program, an employee welfare benefit plan within the meaning of section 3(1) of ERISA, 29 U.S.C. § 1002(1). Plaintiff has standing to bring this action under section 502(a)(1) of ERISA, 29 U.S.C. § 1132(a)(1).

2. Defendant Reliance Standard Life Insurance Company is the administrator of its Long Term Disability Benefits Program within the meaning of section 3(16)(A)(i) of ERISA, 29 U.S.C. § 1002(16)(A)(i). Defendant is headquartered in Chicago, Illinois, and

is doing business in Mississippi and may be served with process through its registered agent, C T Corporation System of Mississippi, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.

3. Defendant Peco Foods, Inc., is a foreign corporation doing business in Mississippi and may be served with process through its registered agent, C T Corporation System of Mississippi, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232. All submissions for disability benefits were required to be submitted to Peco Foods, Inc., for processing.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the parties to this cause.

5. This Court has federal question jurisdiction over the incidents giving rise to this cause of action.

## COUNT ONE:

## CLAIM FOR BENEFITS UNDER THE PLAN

6. Defendant Peco purchased and funded the LTD plan administered by Defendant Reliance Standard as company-sponsored benefit for Plaintiff. Defendant Peco paid premiums to Defendant Reliance Standard for the LTD plan and provided disability coverage as a benefit to its employees, including Plaintiff. Obviously, Defendant Peco would not have purchased a LTD plan as a fiduciary for its employees which contained such restrictive language that eliminates "work in a cold environment" as Defendant Reliance Standard now attempts to assert. If Defendant Peco were to purchase and provide such a restrictive plan for its Sebastopol, Mississippi, employees as a company-sponsored benefit, then Defendant Peco's actions would constitute bad

faith. Similarly, if Defendant Reliance Standard marketed and sold such a plan to Defendant Peco as a company-sponsored plan for purported coverage for Plaintiff, then Defendant Reliance Standard acted in bad faith. Defendant Reliance Standard owed a duty to both Defendant Peco and to Plaintiff to fully and effectively disclose that the plan contained such a narrow definition that would exclude virtually all employees Peco employed at its Sebastopol cold environment facility and, more specifically, Plaintiff.

7. Neither Defendant Peco nor Defendant Reliance Standard made the required adequate and effective disclosure to Plaintiff of such a restrictive definition. This failure to disclose by each of the Defendants is a clear breach of fiduciary duty. In addition, Plaintiff asserts that Defendant Reliance Standard and Defendant Peco's narrow and restrictive interpretation of the definition of "Total Disability" as set forth on page 2.1 of the plan is a clear abuse of discretion:

> CLASS 1 & 3: "Totally Disabled" and "Total Disability" mean, that as a result of an Injury of Sickness, during the Elimination Period and thereafter an Insured cannot perform the material duties of his/her Regular Occupation;
> (1) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury of Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period; and
> (2) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability.

8. Plaintiff worked for Peco Foods, Inc. at the Sebastopol, MS plant beginning in March 1995 as the Hazard Analysis and Critical Control Point (HACCP) Coordinator. Peco Foods, Inc., had a Group Benefit Plan for Long Term Disability (hereinafter "the Plan") administered by the Reliance Standard. Both Reliance Standard and Peco Foods

were inextricably intertwined in their fiduciary duties to Plaintiff and their decision to deny Plaintiff Long Term Disability benefits under the Plan. The Plan is attached hereto as Exhibit "A."

9. Plaintiff initially applied for Short Term Disability with Peco Foods, which was submitted by Peco Foods to Reliance Standard, on March 7, 2016, which was approved. Plaintiff's Short Term Disability benefits ran through June 30, 2016. Plaintiff subsequently applied for Long Term Disability benefits under the Plan on May 25, 2016 immediately with no waiting period. *See* Exhibit "A" at p. 7.0.

10. On August 10, 2016, Defendant Reliant Standard issued its first denial of benefits, having erroneously concluded that:

> Based on our review of the medical documentation on file, we have determined that there are no restrictions and/or limitations present that would preclude you from performing your own occupation on a full-time basis. While it appears that you cannot be exposed to 40 degree temperatures; any requirements regarding work in a cold environment would be job-site specific and not necessarily a requirement of the occupation as it is typically performed in the national economy. Therefore, you would not be precluded from performing your regular occupation.

See Initial Denial Letter, a copy of which is attached as Exhibit "B." This narrow interpretation and denial was done to deny Plaintiff LTD benefits under the Plan to which she was clearly entitled.

11 On September 27, 2016, Plaintiff appealed and requested a review providing a detailed analysis of why Defendants' decision was a clear abuse of discretion. Plaintiff's Appeal is attached as Exhibit "C."

12. Subsequently, Plaintiff was informed by Defendant Peco that Defendant Reliance Standard had again denied her claim for LTD benefits. A copy of the December

4

27, 2016 Reliance Standard denial letter is attached as Exhibit "D." This time Defendants assert the following as a basis to support their denial of benefits:

> Through the use of a third-party vendor, the medical documentation in your claim file was reviewed by Sharon Xu, M.D., Board Certified in Occupational Medicine. Dr. Xu was asked to identify your impairments as of January 28, 2016, and identify any restrictions and limitations imposed by said impairments.
>
> Dr. Xu noted Raynaud's Syndrome as your primary medical condition, although noted that you also suffer from hypertension. She explains that Raynaud's Syndrome is:
>
> *"a significant peripheral vascular disease in which there is microspasm at a vascular level in the extremities, including the fingers and toes in most cases. This vascular spasm causes significant decreased blood flow with significant pain to the extremities and in more severe cases, gangrene type changes to the extremities"*
>
> Dr. Xu ultimately agrees that you have a history of significant frequent "impairment and frequent exposure to cold temperatures in your *work environment.*" She noted you work in a factory where the temperatures are kept at 40 degrees. Your examinations as detailed in your medical records reveal that you were experiencing pain in your hands and feet while in cooler and/or cold temperatures. You also had color changes, including red, white and blue. Dr. Xu further notes that one of the primary treatments for Raynaud's Syndrome is avoidance of cold or cool temperatures, or whichever environment triggers the pain and/or spasms. She notes that Dr. Stanley has also recommended that you change work environments due to the temperatures present at Peco Foods, Inc.
>
> Regarding restrictions and limitations, Dr. Xu notes that, essentially, you are not limited from a physical standpoint, as much as you are from an environmental standpoint and should avoid cooler temperatures. She opines that in a proper work environment, you would be capable of Light work, as defined by the US Department of Labor.
>
> As briefly explained above, your Regular Occupation is *not* defined as your job with a specific employer, your job as it is maintained in a particular work environment or your specialty in a particular occupational field. In evaluating your eligibility for benefits, we must assess your inability to perform your own occupation as it is performed in a typical work setting for any employer in the general economy. The Policy defines Regular Occupation as:

5

*"Regular Occupation" means the occupation the Insured is routinely performing when Total Disability begins.* **We will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale.**

(See Policy LTD 114776, emphasis added.)

Your Policy further defines Total Disability as follows:

*CLASS 1 & 3: "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness, during the Elimination Period and thereafter an Insured* **cannot perform the material duties of his/her Regular Occupation;**
(1) *"Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period; and*
(2) *"Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability.*

(See Policy LTD 114776, emphasis added).

As set forth in your Policy, you must be disabled from your Regular Occupation, as it normally performed within the national economy, not the unique requirements, duties, or environment of Peco Foods, Inc.

We again consulted our Vocational Department to obtain a more thorough understanding of your occupation, and the limits imposed by Raynaud's Syndrome. It was concluded that:

*"the physical restrictions provided are consistent with the physical demands of a Sanitarian. Any exposure to cold temperatures would be job-site specific. As such, there are no restrictions and/or limitations that would preclude Ms. Nichols from performing her Regular Occupation."*

In conclusion, we have determined the previous decision to deny your claim for LTD benefits under Policy LTD 114776, was appropriate. It is apparent, based upon the medical documentation, as well as the information submitted by your employer that while you are limited in your ability to work in colder temperatures, this is a condition specific to Peco Foods, Inc., and not your occupation as a Sanitarian. As such, your claim for LTD benefits must be denied.

6

13. Based upon the medical documentation provided to both Defendants, Plaintiff was clearly unable to perform the essential duties of her occupation as she was now medically prohibited from working in cold temperatures as required by her job as the Hazard Analysis and Critical Control Point (HACCP) Coordinator. The manipulation and restrictive interpretation of the definition contained in the Plan to the exclusive benefit of the Plan Sponsor and Plan Administration is a clear abuse of discretion, particularly in light of the fact that Defendants' had a duty to disclose that the Plan contained the language and could be interpreted in such a way as Defendants now claim. Defendants' self-dealing and promotion of its own self-interests constitute a clear violation of ERISA.

## COUNT TWO

## BREACH OF FIDUCIARY DUTY

14. Paragraphs 1 through 13 are re-alleged and incorporated by reference as if fully set forth herein.

15. Defendants violated ERISA as alleged in this Complaint and have failed to pay the covered benefits claimed by Plaintiff, which Plaintiff is clearly entitled, as identified in Count One hereof.

16. Accordingly, Defendants have failed to discharge their fiduciary duties with respect to the plan **solely in the interests of its participants for the exclusive purpose of providing benefits to the participants** as required by section 404(a)(1)(A)(i) of ERISA, 29 U.S.C. § 1104(a)(1)(A)(i), with the care, skill, prudence and diligence required of them by section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B), and in accordance with the documents and instruments governing the plan as required by section

404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D) (emphasis added). As a result of Defendants' concerted and inextricably intertwined actions; their mutual failure to disclose; and their failure to properly discharge their fiduciary duties as the Sponsor and Administrator of the LTD plan, Defendants wrongfully denied Plaintiff the Long Term Disability benefits owed to her under Defendant Peco's Long Term Disability Plan.

17. Defendants' actions were not solely in the interest of Plaintiff for the exclusive purpose of providing benefits to Plaintiff as required by ERISA. Such self-dealing and promotion of its own self-interests is a clear breach of fiduciary and warrants the award of a setoff as permitted by ERISA.

## COUNT THREE

## ATTORNEYS' FEES

17. Paragraphs 1 through 16 are re-alleged and incorporated by reference as if fully set forth herein.

18. Plaintiff is entitled to recover "a reasonable attorneys' fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

(1) declare, adjudge and decree that the Defendants are obligated to pay all sums owed to Plaintiff,

(2) award Plaintiff a setoff;

(3) award Plaintiff the costs of this action and reasonable attorneys' fees; and

(4) award such other, further and different relief as may be just and proper.

THIS, the 19th day of January 2017.

Respectfully submitted,

JUANITA NICHOLS, PLAINTIFF

By: _____
LOUIS H. WATSON, JR. (MB # 9053)
NICK NORRIS (MB#101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, Mississippi 39216
(601) 968-0000 Telephone
(601) 968-0010 Facsimile
louis@watsonnorris.com