IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JUANITA NICHOLS**                                                                         **PLAINTIFF**

**v.**                                                       **CAUSE NO. 3:17-CV-42-CWR-FKB**

**RELIANCE STANDARD LIFE INSURANCE COMPANY**
**AND PECO FOODS, INC.**                                       **DEFENDANTS**

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**PECO FOODS, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

Defendant, Peco Foods, Inc., (hereinafter "Peco"), by and through its counsel, respectfully submits this Memorandum of Law in Support of the Motion for Summary Judgment filed on its behalf as to all claims brought by Plaintiff in the above-entitled action.

**INTRODUCTION**

Plaintiff Juanita Nichols ("Plaintiff" or "Nichols") is a former Peco employee. This action presents a claim for benefits under an ERISA-governed employee welfare benefit plan sponsored by Peco and funded by a policy of disability insurance issued by co-defendant Reliance Standard Life Insurance Co. ("Reliance Standard").[1] Peco's group disability insurance policy states, in relevant part, that in order to receive long-term disability benefits, a claimant must be found to be "Totally Disabled," which means that due to sickness or injury she is unable to perform the material duties of her regular occupation *"as it is normally performed in the national economy, and not … for a specific employer or in a specific locale."* The thrust of Plaintiff's Complaint is that, despite the express limitations on coverage, Nichols is entitled to benefits based on her inability to continue working for Peco due to environmental conditions present at its facility.

In Count I of her Complaint, Plaintiff asserts that her claim for benefits was wrongfully denied based on the fact that she is medically prohibited from working in cold temperatures as required by her job at Peco. Notwithstanding her benefits claim in Count I, in Count II, Plaintiff improperly asserts a tandem breach of fiduciary duty claim to recover benefits. Nichols contends that defendants wrongfully denied her benefits claim where they failed to fully and effectively explain the application of the plan's provisions to her status, and selected a plan that effectively excluded her.

As demonstrated more fully below, the Plaintiff's claims fail as a matter of law. First, Peco had no authority to resolve benefit claims and did not make the decision to deny Nichols' claim for benefits. The evidence shows that Reliance Standard was clothed with discretion to determine benefits under the plan, and denied Nichols' claim. Moreover, the medical evidence supplied by Nichols supports Reliance Standard's decision. The record evidence confirms Plaintiff cannot tolerate cold environments. However, she apparently does not have any physical limitations or restrictions which otherwise affect her ability to perform light duty work in a different work environment. Nichols flawed assertions ignore the main point – that the relevant criteria is not her job, but rather her own occupation as found in the national economy.

With respect to her fiduciary duty claims, Nichols contends that Peco should have provided her with specific detailed information and notice as to her disability coverage. However, the law does not impose a duty of individualized attention urged by the Plaintiff. Peco discharged its duty when it notified Nichols of the relevant plan terms. And, to the extent Plaintiff seeks to apply ERISA to Peco's actions prior to the creation of the plan, there is no authority to support such an extension of ERISA. Peco's act of establishing the plan did not, as a matter of law, trigger ERISA's fiduciary provisions. In sum, Peco has not harmed Nichols.

---

[1] Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1001, et seq.

**STATEMENT OF THE FACTS**

Peco is an Alabama based poultry processing and packaging company with facilities throughout Mississippi, Alabama and Arkansas. *See* Declaration of Bart Crater at ¶ 3. Peco operates several facilities throughout Mississippi, including one located in Sebastopol. *Id.* Nichols was employed as Peco's Sebastopol facility beginning in March of 1995. *Id.* at ¶ 4. Her last position held at the facility was that of HACCP Coordinator.[2] *Id.* In that position, Nichols' duties included performing daily monitoring activities to evaluate food hygiene and ensure compliance to HACCP plans. *Id. See also* LTD Claim File at pp. 196-98.

Nichols participated in Peco's group disability insurance program. *Id.* at ¶ 5. Peco provided short-term and long-term disability ("STD" and "LTD", respectively) insurance coverage issued by Reliance Standard. *Id.*; Compl., Exh. A. These coverages were paid for by Peco at no cost to the employee participants. *Id.* Reliance Standard provided Peco with the Summary Plan Descriptions for the STD and LTD coverage. *See* Crater Decl. at ¶ 5. Peco made the Summary Plan Descriptions available to all plan participants, including the Plaintiff.[3] *Id.*

In January of 2016, Nichols began seeking treatment for Raynaud type symptoms.[4] *See* Complaint at Exh. B. Plaintiff reported experiencing pain and discoloration in her hands and feet while working in cold temperatures. Her physicians ultimately determined that she could not be exposed to cold temperatures. *Id.* Based on that restriction, the Plaintiff could not return to her job at

---

[2] HACCP is a systematic preventative approach to food safety and involves identifying and controlling possible hazards in production processes that can cause the finished product to be unsafe. *See* Crater Decl. at n.1.

[3] Copies of Summary Plan Descriptions were distributed to all participants by first-class mail. Peco also maintained an office where a copy of the Summary Plan Descriptions along with other plan related documents were kept on file and could be reviewed upon request. *See* Crater Decl. at ¶ 5.

[4] Raynaud's phenomenon is a type of vascular disease characterized by color changes and numbness of the fingers, toes, ears or nose, most commonly after exposure to cold. *See* http://www.webmd.com/arthritis/tc/raynauds-phenomenon-topic-overview#1.

Peco's facility, where she was exposed to cold (40 degree) temperatures on a consistent basis. *See* Crater Decl. at ¶ 6. Nichols requested and was granted a medical leave of absence. Her FMLA leave time expired on April 25, 2016. *Id*. After expiration of her FMLA leave time, Nichols requested and was granted a thirty-day personal leave. The thirty-day personal leave expired on May 25, 2016. *Id*. Because Nichols was not able to return to work, Peco terminated her employment after the expiration of her personal leave. *Id*.

During her sick leave, Nichols applied for STD benefits. *See* LTD Claim File at pp. 110-14. Reliance Standard granted Plaintiff's claims for STD under Peco's plan with disability payments thereunder through at least June of 2016. *See* Compl. at ¶ 9; LTD Claim File at p. 164.

In May of 2016, after exhaustion of her leave benefits, Nichols applied for LTD benefits. *See* LTD Claim File at pp. 164-65. Reliance Standard conducted a review of the documentation provided in support of Nichols' claim and concluded that she did not meet the policy's definition of "Total Disability." *See* Compl, Exh. B. In July of 2016, Plaintiff was advised by Reliance Standard that the medical review did not support her LTD claim. *See* LTD Claim File at p. 55. Nichols was formally notified by letter dated August 10, 2016, that Reliance Standard denied her claim for LTD benefits because her medical restrictions were "job-site specific and not necessarily a requirement of the occupation as it is typically performed in the national economy. Therefore, [she] would not be precluded from performing [her] regular occupation." *See* Compl., Exh. B.

Nichols appealed the denial of LTD benefits to Reliance Standard's Claims Department, insisting that her claim should be approved because she should not be working in a cold environment and "[her] regular job duties as HACCP Coordinator include doing exactly that." *See* LTD Claim File at pp. 229-30. Reliance Standard conducted an independent review of Nichols' claim. *See* Compl., Exh. D. It submitted Nichols' medical documentation to an independent physician, who

confirmed the records objectively show Plaintiff's ability to perform light duty work. *Id.* A vocational review of Nichols' occupation determined that it is a light duty occupation. Accordingly, Reliance Standard concluded that Nichols was not totally disabled from her regular occupation. *Id.* Reliance Standard notified Nichols by letter dated December 27, 2016 that it was upholding its decision to deny LTD benefits. *Id.*

### STANDARD OF REVIEW

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure where "the pleadings, depositions, answer to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact." *Butcher v. Allstate Ins. Co.*, 2009 WL 281826, at *2-3 (S.D. Miss., Feb. 4, 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (quotations omitted). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Butcher*, 2009 WL 261826 at *3 (quoting *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986)). "Unsubstantiated assertions are not competent summary judgment evidence. Nor are conjecture or speculation adequate to satisfy the nonmovant's burden." *McNeill v. City of Canton*, 2008 WL 249437, at *2 (S.D. Miss. Jan. 29, 2008) (citing *Parker v. Tyson Foods, Inc.*, 2007 WL 2021928, at *1 (S.D. Miss. July 9, 2007)).

Also, "[n]o genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Jenkins v. Methodist Hospitals of Dallas, Inc.,* 478 F.3d 255, 260 (5th Cir. 2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant,

or where it is so overwhelming that it mandates judgment in favor of the movant, summary judgment is appropriate." *Castera Robles v. Cayton*, 454 Fed. Appx. 373, 376 (5th Cir. 2011) (citing *Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir. 1993)).

Applying these standards to the undisputed facts in this case demonstrates Peco is entitled to summary judgment on Plaintiff's claims as a matter of law.

## ARGUMENT & AUTHORITY

### I. Peco Was Not Responsible for the Denial of Nichols' Benefits.

Nichols asserts that defendants wrongfully denied her claim for LTD benefits under Peco's group disability insurance policy. However, the record evidence clearly demonstrates that Reliance Standard was solely responsible for the denial of Nichols' claim. Accordingly, she has no cause of action against Peco. *See e.g., Armando v. AT&T Mobility*, 487 Fed.Appx. 877, 879 (5th Cir. 2012) (Employer without "final authority" to make benefits decisions and with no role in the formal decision making and appeals process is not a proper defendant for a denial of benefits claim); *Musmeci v. Schwegmann Giant Super Mkts, Inc.*, 332 F.3d 339, 349-350 (5th Cir. 2003) (An employer is a proper party only if it actually made the decision to deny benefits); *Ciaramitaro v. UNUM Life Ins. Co. of America, Inc.*, 521 Fed.Appx. 430 (6th Cir. 2013) (Employer without discretionary authority to determine eligibility for benefits is not a proper party.)

The *Ciaramitaro* case is particularly instructive. In *Ciaramitaro*, the participant, as the Plaintiff in this case, sued her employer as well as the benefits administrator of her long-term disability plan seeking benefits she claimed were owed under an ERISA-covered long-term disability plan. The employer provided its employees with a long-term disability plan insured by UNUM. The plan defined "disability" as when a participant is "limited from performing the material and

substantial duties of [her] regular occupation due to sickness or injury…." *Id.* at 432. Though the employer was the plan administrator, benefit determinations were made by UNUM, which was vested with "discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of [the plan]". *Id.* On that basis, the district court dismissed the participant's claims against her employer. On appeal, the Sixth Circuit affirmed, noting that the key question in defining whether the employer was a proper party was whether the employer played a role in controlling or influencing the plaintiff's benefit decision. The court concluded that the employer "could not have done that because UNUM was vested with discretionary authority to determine eligibility for benefits. *Id.* at 438.

Here, the facts are virtually identical. Reliance Standard was vested with discretionary authority to interpret the plan and to determine eligibility for benefits. Therefore, Nichols' claims against Peco should be dismissed.

## II. Reliance Standard's Decision to Deny Benefits is Entitled to Deferential Review Under an Abuse of Discretion Standard.

Reliance Standard's decision to deny Nichols claim for LTD benefits is reviewable only for an abuse of discretion because it is a factual determination. *See e.g., Dutka v. AIG Life Ins. Co.,* 573 F.2d 210, 212 (5th Cir. 2009); *Adams v. Metro. Life Ins. Co.*, 549 F.Supp.2d 775, 787-88 (M.D.La.2007). The plan documents also grant Reliance Standard discretion sufficient to warrant only arbitrary and capricious standard of review.[5] The LTD policy grants to Reliance Standard discretionary authority in the following language:

---

[5] Courts similarly review an administrator's determination for abuse of discretion when the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits. *Vercher v. Alexander & Alexander Inc.,* 379 F.3d 222, 226 (5th Cir. 2004).

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

*See* LTD Claim File at p. 14. Therefore, it is clear that the plan grants Reliance Standard authority to approve or deny claims. The Summary Plan Description ("SPD") also provides full discretionary language. *See* Crater Decl., Exh.2, p. 5.

**III.     Reliance Standard's Decision was Reasonable and Supported by Substantial Evidence.**

The policy at issue requires proof of "Total Disability," meaning that due to sickness or injury the claimant is unable to perform the material duties of her "Regular Occupation." The policy further provides that a claimant's "Regular Occupation" will be viewed "as it is normally performed in the national economy, and not the unique duties performed for a specific employer." *See* LTD Claim File, pp. 9-10; Crater Decl., Exh. 2, p. 205.

Reliance Standard conducted a review of the documentation provided by Nichols in support of her claim and concluded that, based upon the medical evidence, the Plaintiff did not meet the policy's definition of total disability. Reliance Standard analyzed the policy along with duties and demands of Nichols' specific position, determining that Peco's requirements regarding work in a cold environment were job-site specific and not necessarily a requirement of her occupation as it is typically performed in the national economy. Reliance Standard opined that Nichols' occupation was best represented by the occupation of "Sanitarian" in the Department of Labor's Dictionary of Occupational Titles ("DOT").[6] According to the DOT, the occupation of Sanitarian is classified as light exertion. Reliance Standard did not find evidence of any restrictions or physical limitations

---

[6] Courts have found an insurer's use of the DOT to determine a claimant's occupation is reasonable and within discretionary authority. *See e.g., Osborne v. Hartford Life and Acc. Ins. Co.,* 465 F.3d 296, 299 (6th Cir.2006).

imposed upon Nichols by her doctors which would prevent her from performing a light exertion occupation. Thus, it determined that, even though Nichols was unable to meet the physical requirements for employment at Peco, she retains the ability to perform the material duties of her occupation for other employers. These findings are supported by the opinions of an independent physician who reviewed Nichols' medical records and other materials. *See* Compl., Exh. D.

**IV.     Plaintiff's Breach of Fiduciary Duty Claims are Foreclosed by her Duplicative Claim for Benefits.**

As discussed above, Nichols' suit alleges an entitlement to benefits (Count I), and also asserts a separate claim for breach of fiduciary duty based on the improper denial of benefits (Count II) ostensibly under ERISA § 502(a)(3) (codified at 29 U.S.C. §1132(a)(3)), although she does not cite a specific provision. In essence, a claim under § 502(a)(1) of ERISA is a breach of contract action for failure to pay benefits due, or to clarify future benefits owed under a benefits plan. *See* 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(2) furnishes a remedy for breaches of fiduciary duty that generally pertain to misuse or improper management of plan assets, while § 502(a)(3) provides a basis for relief for all other violations of ERISA or the terms of the plan, including breaches of fiduciary duty, not encompassed by § 502(a)(2). *See* 29. U.S.C. §§ 1132(a)(2) and 1132(a)(3).

In *Varity Corp. v. Howe*, 516 U.S. 489 (1996), the United States Supreme Court considered whether benefit plan participants, such as Plaintiff, could rely on § 502(a)(3) of ERISA to obtain individual relief for breaches of fiduciary duty. Reviewing that section of ERISA's "catch all" provision, the Court held that § 502(a)(3) allows participants or beneficiaries to sue for breach of fiduciary duty for personal recovery, but *only* when no "other appropriate equitable relief" is available. *Id.* at 512. Recognizing that § 502(a)(1) specifically provides the avenue for participants to recover benefits due or to enforce rights under the terms of the plan, the Court admonished lower

courts to exercise caution in allowing individuals to rely on the § 502(a)(3) catch all provision where § 502(a)(1)(B) provides an adequate claim. *Id.*

On the basis of *Varity*, courts have consistently rejected participants' claims for breach of fiduciary duty that are in substance challenges to benefit determinations. Rather, courts have stated the proper remedy is a claim for benefits:

> When a beneficiary wants what was supposed to have been distributed under the plan, the appropriate remedy is a claim for denial of benefits under §502(a)(1)(B) [29 U.S.C. §1132(a)(1)(B)]. (Citations omitted).

*McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000).

In *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604 (5th Cir. 1998), the court held that the plaintiff's claims for breach of fiduciary duty were precluded since relief was available under 29 U.S.C. §1132(a)(1):

> [Plaintiff's] efforts to justify assertion of breach of a fiduciary duty claim against the Plans by distinguishing such a claim from his claims for coverage and benefits claims are woefully unavailing. If they are distinctions at all, they are without differences. This was succinctly and correctly explained by the district court: Because [plaintiff] has adequate redress for disavowed claims through his right to bring suit pursuant to section 1132(a)(1), he has no claim for breach of fiduciary duty under section 1132(a)(3).

141 F.3d at 610. *See also Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999) (A plaintiff may not assert a claim for plan benefits and breach of fiduciary duty under section 1132).[7]

In this case, Nichols' claim for breach of fiduciary duty is nothing more than a "repackaged" claim for benefits. *See Rochow v. Life Insurance Co. of North America*, 780 F.3d 364, 373 (6th Cir. 2015) ("Impermissible repackaging is implicated whenever, in addition to the particular adequate

remedy provided by Congress, a duplicative or redundant remedy is pursued to redress the same injury."). Nichols seeks the same relief— payment of benefits— for the same alleged injury— a denial of benefits under § 502(a)(3). *See* Compl. at ¶ 16. Plaintiff tries to escape the consequences of *Varity* by alleging that defendants breached their fiduciary duty by making errors in selecting plan terms and failing to adequately explain their restrictive interpretation of the plan. These are nothing more than allegations of an arbitrary and capricious claim determination, which can only be brought under § 502(a)(1)(B). Equitable relief is not "appropriate" under § 502(a)(3) where a plaintiff seeks identical relief under both Sections 502(a)(1)(B) and (a)(3), and adequate relief is available under § 502(a)(1)(B). *Varity*, 516 U.S. at 515. Therefore, Nichols' redundant claim for breach of fiduciary duty is subject to dismissal.

Moreover, even if Nichols were allowed to assert a breach of fiduciary duty claim, there is no breach evident in the record.

## V. Nichols was Notified that the Plan Defines Disability in Reference to How Her Job Was Performed in the National Economy.

Eligibility for benefits under any ERISA plan is governed by the plain meaning of the plan language. *See Tucker v. Shreveport Transit Management Inc.,* 226 F.3d 394, 398 (5th Cir. 2000). In this case, the plan language clearly stated that to in order to receive LTD benefits, a claimant must be found "Totally Disabled" in her "Regular Occupation." Nichols was expressly notified that Reliance Standard "will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale." Crater Decl. at

---

[7] As with this case, the plaintiffs in both *Tolson* and *Rhorer* sued their employers *and* the insurance companies or entities making the benefits determinations, asserting claims for breach of fiduciary duty and wrongful denial of benefits. Based on *Varity*, the court rejected the breach of fiduciary duty claims in both cases.

¶ 5. Thus, Peco met its disclosure requirements under ERISA. 29 C.F.R. § 2520.104b-1(b)(1). While Nichols alleges that Peco is liable for failing to give some additional notice concerning how a participant in her precise situation might fare under the policy, there is no basis for such a claim.

Peco has no duty under ERISA to provide individualized attention to a participant in informing her of her benefits. *Lee v. union Electric Co.*, 606 F. Supp. 316 (E.D. Mo. 1985). Under Fifth Circuit case law, Peco "does not have any fiduciary duty to determine whether an eligible employee is confused or unclear about her coverage under an employee benefits plan." *See Wache v. Inter-Continental Hotels Corp.*, 1997 WL 599308, *3 (E.D. La. Sept. 25, 1997). *Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1299 (5th Cir. 1995) ("absent a specific participant-initiated inquiry, a plan administrator does not have any fiduciary duty to determine whether confusion about a plan term or condition exists"). A summary plan description cannot violate ERISA merely because it could have included language more specifically discussing the precise situation of a particular beneficiary. *Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404 (9th Cir. 1989).

In *Stahl*, *supra* the Ninth Circuit carefully examined ERISA's requirement that employers give employees a plan summary explaining the circumstances which may result in loss of benefit. Stahl had retired after working for Tony's for more than two decades. *Id.* at 1404. During the last half of his employment, Tony's and the plaintiff's union were parties to four consecutive collective bargaining agreements which required Tony's to make contributions to pension plan on behalf of its employees. After expiration of the fourth agreement, Tony's stopped making payments to the plan. Stahl retired several months later, and was awarded future service credits based on the vested contributions made to the plan by his employer. However, he was denied past service credits. *Id.* at pp. 1405-06. The summary for the plan had informed employees that cessation of employer contributions would result in the loss of past service credits. *Id.* at p. 1408. Stahl argued that the plan

description should have further explained that employers were likely to fail to make contributions after expiration of a collective bargaining agreement, and that employees put their past service credits at risk by continuing to work rather than retire. *Id*. at 1407. The Ninth Circuit disagreed, holding that "to require summary plan descriptions to discuss the application of general rules to a wide range of particular situations and thereby provide specific advice to employees on how to shape their conduct to fit the rules" would "undermine the statute." *Id.* at 1408. "It is sufficient that the plan summary provide enough information from which the employee can infer the risk of loss of benefits." *Id.*

Applying the Court's analysis in *Stahl* to the facts of this case, Peco fulfilled its duty. The summary plan description provided to Nichols explained the rule applied to her in understandable terms from which she could have determined the full import of the rule applied to her. Peco had no duty to try to anticipate or address Nichol's particular situation.

## VI.   An Employer Does Not Act as a Fiduciary When it Decides On the Terms of a Plan.

To the extent Plaintiff seeks to have this Court apply ERISA to Peco's actions prior to the creation of the plan, there is no authority to support such an extension of ERISA. As a matter of law, ERISA's fiduciary duties do not apply to parties engaged in business decisions or plan design. *See e.g., Hunter v. Caliber Sys. Inc.,* 220 F. 3d 702, 720 (6th Cir. 2000) (fiduciary obligations only relate to fiduciary functions); *Jones v. Kodak Med. Assistance Prog.*, 169 F. 3d 1287, 1292 (10th Cir. 1999) (An employer does not act as a fiduciary when it sets the terms of a plan.); *McNabb v. GM Corp.*, 162 F.3d 959, 961-62 (7th Cir. 1998) (An employer is entitled to adopt a plan that is in its best interest.); *Akers v. Palmer*, 71 F.3d 226, 230 (6th Cir. 1993) (A trustee is not subject to fiduciary duties when it decides what plan terms will be; ERISA is not involved in regulating conduct affecting the establishment of a plan or its terms.")

Nothing in ERISA requires employers to establish employee benefit plans nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983). As the Sixth Circuit succinctly explained in *Akers, supra,* "[b]ecause an employer has no affirmative duty to create a benefits plan for its employees, only actions respecting the *administration* or *management* of plan assets are subject to fiduciary standards." *Akers*, 71 F.3d at 230 (citations omitted; italics in original). Therefore, "courts have no authority to decide which plan benefits employers must confer upon their employees or to review a plan's provisions for reasonableness…. Simply put, ERISA's concern is with the elements of a plan and its administration *after* it has been established." *Id.* (italics in original).

Because Peco's act of establishing its group disability insurance plan did not trigger ERISA's fiduciary provisions, such act cannot support Plaintiff's claim for breach of fiduciary duty.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff has produced insufficient evidence to establish the elements necessary to prevail in this case. Without such evidence, Plaintiff fails to raise a genuine issue of material fact which precludes summary disposition of this case pursuant to Rule 56 of the Federal Rules of Civil Procedure. Accordingly, Peco respectfully requests that its Motion for Summary Judgment as to all of the Plaintiff's claims against it be granted. It further requests the Motion be granted as to all counts of the Complaint and requests such other and further relief as the Court deems appropriate.

Respectfully submitted, this the 13th day of November, 2017.

**PECO FOODS, INC.**


By:<u>*/s/ Claire W. Ketner*</u>
                One of Its Attorneys

OF COUNSEL:

STEPHEN J. CARMODY, MSB #8345
CLAIRE W. KETNER MSB #99708
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Ste. 100
190 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205-0119
Telephone: 601.948.3101
Facsimile: 601.960.6902

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day electronically transmitted the foregoing pleading or other paper to the Clerk's Office using the CM/ECF System for filing which transmitted a Notice of Electronic Filing to all CM/ECF registrants in this case.

                              <u>*/s/ Claire W. Ketner*</u>