UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JUANITA NICHOLS                                                                            PLAINTIFF

v.                                         CIVIL ACTION NO.:  3:17-CV-42-CWR-FKB

RELIANCE STANDARD LIFE INSURANCE
COMPANY and PECO FOODS, INC.                                                     DEFENDANTS

**DEFENDANT RELIANCE STANDARD LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

I.  **INTRODUCTION**

This lawsuit involves a claim for long term disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1 – 1461.  To qualify for benefits, a claimant must be unable to perform the material duties of her "regular occupation."  This term is defined under federal common law as well as the Policy to mean the occupation as it is performed nationally and does not include the unique duties a claimant performs for her employer.  Here, Plaintiff's *job* required her to work in the cold, something she cannot do.  However, working in the cold is not a material duty of her regular occupation.  Therefore, the denial of the claim cannot be arbitrary and capricious.

Plaintiff also argues that Reliance breached its fiduciary duty by defining "regular occupation" in the manner that was done in the Policy.  However, the Supreme Court has held that there can be no fiduciary liability related to the selection of the terms of a plan.  Equally important, since the Fifth Circuit has adopted the same definition of "regular occupation" used by Reliance, it cannot be a breach of fiduciary duty.  There is no merit whatsoever to the claims in this lawsuit.  Therefore, Reliance is entitled to judgment in its favor.

## II.   FACTUAL BACKGROUND

1. Reliance issued group long term disability policy number LTD 114776 to Peco Foods, Inc. (hereafter "Peco Foods")  (AR1, Dkt. 1).

2. The policy and claims made under it are governed by ERISA.  (Dkt. 1).

3. Prior to claiming disability on or about January 28, 2016, Plaintiff worked as a Hazard Analysis and Critical Control Point ("HACCP") Coordinator for Peco Foods at a chicken processing facility.  (AR114, 229).

4. Plaintiff's job with Peco Foods required her to work in cold environments. (AR229).

5. Plaintiff has been diagnosed with Raynaud's phenomenon, which causes symptoms such as pain in her hands and feet when she is exposed to cold.  (AR104, 112).

6. Gregory Stanley, M.D., a vascular surgeon, recommended against Plaintiff being exposed to cold at work.   (AR281).

7. The Policy defines Total Disability as follows:

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness, during the Elimination Period[1] and thereafter an Insured cannot perform the material duties of his/her Regular Occupation;
>
> * * *

(AR10).

8. Of particular importance in this case, the term "Regular Occupation" from the above definition of Total Disability is defined as follows:

> Regular Occupation means the occupation the Insured is routinely performing when Total Disability begins. *We will look at the Insured's occupation as it is normally performed in the national*

---

[1] The Elimination Period is "180 consecutive days of Total Disability" and must be satisfied before benefits are paid.  (AR7)

> *economy, and not the unique duties performed for a specific employer or in a specific locale.*"

(AR9) (emphasis added).

9. Sharon X. Xu, M.D., Board Certified in Occupational Medicine and Rehabilitation, reviewed Plaintiff's records and issued a report on November 4, 2016. (AR 261-268).

10. Dr. Xu concluded that claimant "has much less of a physical capacity limitation and more of an environmental limitation. This is supported by the evaluation by the vascular surgeon, Dr. Stanley, on 05/04/2016." (AR 265).

11. According to Dr. Xu:

> In the proper work environment, there would be no restrictions and the claimant should be able to perform all activities, including sit, stand, walk, bend at the waist, squat at the knees, climb stairs, climb ladders, kneel, crawl, use foot control, drive on a frequent basis. When concerning the upper extremities, the claimant, in the proper work environment, should be able to perform simple grasping, reach above the mid chest, reach above the waist at desk level, pushing and pulling, manipulation, feeling, and tactile sensation could be performed on a frequent basis in the bilateral upper extremities.

(AR267) (emphasis added).

12. Dr. Xu believed a proper work environment would be one where there are normal room temperatures and no exposure to cold, unlike Plaintiff's specific job. (AR 267).

13. Matthew Bolks, MS. CRC, a vocational rehabilitation specialist, identified the "material duties" of Plaintiff's "regular occupation." (AR192).

14 Mr. Bolks determined that Plaintiff's job as a HACCP Coordinator for Peco Foods fell within the occupation of Sanitarian. A Sanitarian "[s]upervises and coordinates activities of worker engaged in duties concerned with sanitation programs in food processing establishments." (AR 272).

15. The Tasks of a Sanitarian are comparable with those of Plaintiff's job as HACCP Coordinator with one notable exception. The occupation, which is determinative under the Policy, does not require exposure to cold. (AR231, 272).

16. On August 10, 2016, Reliance notified Plaintiff that her claim for benefits was denied. As the letter explained:

> Based on our review of the medical documentation on file, we have determined that there are no restrictions and/or limitations present that would preclude you from performing your own occupation on a full time basis. While it appears that you cannot be exposed to 40 degree temperatures; any requirements regarding work in a cold environment would be job-site specific and not necessarily a requirement of the occupation as it is typically performed in the national economy. Therefore, you would not be precluded from performing your regular occupation.

(AR85).

17. Plaintiff appealed the decision to deny the claim on September 28, 2016. In her appeal, Plaintiff largely ignored the distinction between her "job" and her "regular occupation," arguing that she "should not be working in cold environments. My regular job duties as HACCP Coordinator include doing exactly that." (AR254).

18. After considering all of the information, Reliance upheld the decision to deny long term benefits on December 27, 2016. (AR93-96). Reliance stated:

> As set forth in your Policy, you must be disabled from your Regular Occupation, as it normally performed within the national economy, not the unique requirements, duties, or environment of Peco Foods, Inc … It is apparent, based upon the medical documentations as well as the information submitted by your employer that while you are limited in your ability to work in colder temperatures, this is a condition specific to Peco Foods, Inc., and not your occupation as a sanitarian.

(AR95).

III.  **ARGUMENT**

    a. **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment must be issued when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, when, as is the case here, there exists no genuine issue of material fact, summary judgment is appropriate after there has been "adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

Notwithstanding the above, the Fifth Circuit has recognized the usual inferences in favor of the non-moving party do not apply in ERISA cases when a court's review is for abuse of discretion. *Killen v. Reliance Standard Life In. Co.,* 776 F.3d 303, 307 (5th Cir. 2015). Here, Reliance has discretionary authority to interpret the terms of the Policy and to make benefit eligibility determinations. (AR14). Therefore, the Court must review the benefit decision under the deferential abuse of discretion/arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956 (1989) ("we hold that a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority. . .").

### b. ERISA Standard of Review

A court's review under the deferential standard applicable here is limited to the record that was before Reliance at the time it made its final claim decision. *See Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299-300 (5th Cir. 1999) (abrogated on other grounds). Because Reliance's "decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). This is so even when the claimant supports her claim with alternative, substantial evidence of her own. *See Ellis*, 394 F.3d at 273. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lain v. UNUM Life Ins. Co. of Am.,* 279 F.3d 337, 342 (5th Cir. 2002). In this case, there is no evidence, let alone substantial evidence that would support Plaintiff's claim or more important, that would show that Reliance's decision was arbitrary and capricious.

Reliance's decision can only be deemed arbitrary "if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). Moreover, under the abuse of discretion standard, a court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness — even if on the low end." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389 (5th Cir. 2007).

This Court may consider the fact that Reliance serves a dual role, as both insurer and decision maker. The resulting, structural conflict of interest is, however, only one of many factors that the Court should consider. *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007). *See also Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343,

2351 (2008). The structural conflict serves as a tiebreaker only when the other factors are closely balanced. And, when the facts do not present a close call, the structural conflict should be deemed a non-issue. *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 925 (5th Cir. 2008) (refusing to use the structural conflict as a tie breaker because of the absence of closely balanced evidence). In this case, the relevant factors are not close. Again, they weigh heavily in favor of Reliance's decision to terminate benefits and that decision should not be disturbed.

      **c. Reliance's denial of benefits was neither arbitrary nor capricious.**

         **i. The Policy clearly defines "regular occupation"**

Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary may file a lawsuit "to recover benefits due to him under the terms of his plan." But here, under the plain language in the Plan document no benefits are due. Therefore, Reliance is entitled to judgment on this claim.

Plaintiff cannot argue around the clear terms of the Policy. Here, the Policy specifically defines "regular occupation" as meaning the occupation as it is performed "in the national economy and not the unique duties performed for a specific employer in a specific locale." (AR9-10). Significantly, this definition is close if not identical to the Fifth Circuit's interpretation of the term in *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 453 (5th Cir. 2007). Unlike the Policy in this case, the one in *House* did not define the term "regular occupation." Nevertheless, the Court held that it refers to a general occupation in the national economy rather than a claimant's particular position with his/her employer. *Id.*

Contrary to the plain language in the Policy and the holding in *House*, Plaintiff asks the Court to award benefits based on her inability to perform the specific duties of her job, not those of her occupation. Plaintiff's arguments are analogous to the rejected reasoning in *House*, where the Court stated:

> We find the district court's distinction between "trial lawyer" and "lawyer" too fine under a common sense interpretation of "regular occupation." A number of courts have upheld an interpretation of "regular occupation" as meaning a general occupation rather than a particular position with a particular employer … House's "regular" occupation was as an attorney, not restricted to his own specific job as a litigation attorney with a uniquely stressful practice, but rather referencing the activities that constitute the material duties of an attorney as they are found in the general economy. *See, e.g.*, *Osborne v. Hartford Life and Accident Ins. Co.*, 465 F.3d 296, (6th Cir. 2007) ("Whatever the meaning of 'regular' is, it is not synonymous with 'own'").

*House,* 499 F.3d at 453. *See also*, *Robinson v. Aetna Life Ins. C*o., 443 F.3d 389, 396 (5th Cir. 2006) (the correct interpretation of "own occupation" is the occupation in the general economy, as opposed to a specific job for a specific employer).

While the decision in *House* is precedential and dispositive on the point, it is noteworthy that arguments similar to the one made by Ms. Nichols have been rejected. For example, in *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149 (D. Kan. 2010), the plaintiff argued that the denial of the claim was erroneous because the defendant did not consider the extensive travel required by her job. The court concluded that the claimant's "own occupation" did not include extensive travel and upheld the denial of the claim.

In *Patterson v. Prudential Ins. Co. of Am.*, 693 F. Supp. 2d 642 (S.D. Tex. 2010), the plaintiff argued that the occupation identified by the defendant was too general and did not include duties he performed like moving furniture and getting office supplies and the mail. Citing to *House* and several other decisions, the court held that the defendant's "conclusion that those general duties - and not specific functions performed by Plaintiff in his particular job-comprise the 'material and substantial duties' of Plaintiff's 'occupation' was fair and reasonable, and in accordance with the legally correct interpretation of the Plan's terms." *Id*. at 653-54.

8

In her appeal from the claim denial, Plaintiff did not argue that a different "occupation" should have been used by Reliance when identifying her material duties. (AR254-255). She only argued that Reliance should have considered her specific job duties. For example, she told Reliance that her condition "prohibited me from working in cold environments which exist both inside the plant and in the office where I worked at this chicken processing facility." (AR254). Later, she stated "I should not be working in cold environments. My regular job duties as HACCP Coordinator include doing exactly that." (AR254). These statements cannot provide a basis for awarding benefits.

As explained above, Plaintiff's claim must be based on her ability to perform the material duties of her "regular occupation" and not her specific job with Peco Foods. Working in a cold environment was a duty of Plaintiff's job, not her occupation. This is confirmed by the vocational review which is unrefuted. (AR272-73). As such, Reliance's interpretation of the Policy and its denial of the claim cannot be considered wrong, let alone arbitrary and capricious.

In her appeal, Plaintiff raised an additional argument. She stated that her claim should be approved because "this is the only position of its type in Sebastopol, MS, it is impossible for me to secure other comparable employment within my occupation." (AR254). Even if true, the Reliance Policy does not condition receipt of benefits on the unavailability of other positions. This same argument was rejected in *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1455 (D.C. Cir. 1992). Then-Circuit Judge Ruth Bader Ginsburg responded on behalf of the Court as follows:

> Block next complains that the Committee furnished no vocational evidence of jobs for which he was "reasonably fitted by education, experience, capability or training." *See* Plan § 2.19. The Plan, however, called for determinations of total disability "on the basis of periodic medical examinations." *Id.* No provision required Pitney Bowes, as a condition of terminating Block's compensation, to "ensure the availability of an alternative job." *See Jestings v. New England Telephone & Telegraph Co.,* 757 F.2d 8, 11 (1st Cir. 1985).

9

*Block*, 952 F.2d at 1455. For the same reasons, the argument must also be rejected in this case.

Plaintiff's disability claim is based on a single factor – her inability to work in the cold. All of the medical professionals in this case agree that Plaintiff should avoid working in cold temperatures. Reliance does not dispute this medical conclusion. However, the question here is whether Plaintiff is eligible for benefits under the terms of the Reliance Policy. In accordance with the plain language in the Policy and the decision in *House*, since exposure to cold is not a material duty of Plaintiff's regular occupation, it cannot be the basis for her disability claim. The denial of this claim was not arbitrary and capricious.

### d. Plaintiff's Breach of Fiduciary Duty claim is legally deficient and must be dismissed.

In apparent recognition that there is no valid claim under the terms of the Policy, Plaintiff alternatively argues that Defendants breached their fiduciary duties by not defining "regular occupation" to correspond with the duties performed by Peco Foods employees. There is absolutely no merit to this argument. There is no clearer example than the fact that the Fifth Circuit has adopted a definition of "occupation" that is broader than a claimant's own job. *House,* 499 F.3d at 453.

Plaintiff's breach of fiduciary duty argument must fail for other reasons. First and foremost, the type of coverage selected by a plan sponsor is a "settler" function for which there can be no liability under ERISA. The ERISA statute does not require employers to provide any particular benefits. *Shaw v. Delta Air Lines*, 463 U.S. 85, 88, 103 S. Ct. 2890 (1983). Therefore, the Supreme Court has held that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Lockheed Corp. v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). "When employers undertake those actions, they do not act as fiduciaries, but are analogous to the settlors of a trust." *Id*. While

*Spink* involved a pension benefit plan, the Court made it clear that its holding applies equally to welfare benefit plans. *Id*. at 517 U. S. at 890-891.

Later, in *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 444, 119 S.Ct. 755, (1999), the Supreme Court held that ERISA's fiduciary requirements were *not* implicated where the plan sponsor acting as settlor made a decision regarding the structure of the plan, including who was entitled to receive Plan benefits. Because the terms selected for a plan cannot give rise to fiduciary liability, there can be no valid claim against any Defendant under Section 1132(a)(3) of ERISA.

## IV. CONCLUSION

For the reasons stated above, Plaintiff is not entitled to benefits or any other relief under the policy. Therefore, Reliance is entitled to summary judgment in its favor on all claims.

This, the 13th day of November, 2017.

        Respectfully submitted,

        **RELIANCE STANDARD LIFE INSURANCE COMPANY**

    By: *s/ Kelly D. Simpkins*
        Kelly D. Simpkins, Esq. (MSB #9028)

OF COUNSEL:
WELLS MARBLE & HURST, PLLC
300 Concourse Boulevard, Suite 200
Ridgeland, Mississippi 39157
Post Office Box 131
Jackson, Mississippi 39205-0131
Telephone:   (601) 605-6900
Facsimile:   (601) 605-6901
ksimpkins@wellsmar.com

## **CERTIFICATE OF SERVICE**

      I, Kelly D. Simpkins, do hereby certify that I electronically filed the foregoing, Reliance Standard Life Insurance Company's Motion For Summary Judgment and Supporting Memorandum of Law, with the Clerk of Court using the ECF system, which sent notification of such filing to the following:

    Louis H. Watson, Jr., Esq.
    Nick Norris, Esq.
    WATSON & NORRIS, PLLC
    1880 Lakeland Drive, Suite G
    Jackson, Mississippi 39216

        ATTORNEYS FOR PLAINTIFF

    Stephen J. Carmody, Esq.
    Claire W. Ketner, Esq.
    BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
    190 East Capitol Street
    The Pinnacle Building, Ste. 100
    Jackson, Mississippi  39201

        ATTORNEYS FOR DEFENDANT PECO FOODS, INC.

This, the <u>13th</u> day of November, 2017.

                                          *s/ Kelly D. Simpkins*
                                          Kelly D. Simpkins

                                                            /261765