

———————————

No. 3:17-CV-42-CWR-FKB

Juanita Nichols,

*Plaintiff,*

*v.*

Reliance Standard Life Insurance Co.,

*Defendant.*

———————————

Order Granting Disability Benefits

———————————

Before Carlton W. Reeves, *District Judge.**

Few Americans can retire on their savings alone.[1] Instead, many participate in an employee benefits plan, which can provide financial security in case of disability or retirement.[2]

———————————

* Where possible, this opinion includes hyperlinks for cited sources.

[1] *See* Employee Benefit Research Institute, *2018 Retirement Confidence Survey* (2018).

[2] *See* Jack VanDerhei, *The Importance of Defined Benefit Plans for Retirement Income Adequacy*, Employee Benefit Research Institute Notes (2011).

The insurers that manage these plans often have conflicting missions of deciding who qualifies for benefits and ensuring those decisions do not undermine their own bottom line.[3]

 "When guarding the henhouse," as one expert on employee benefits plans said, "some foxes are bound to go rogue."[4] Last decade, for example, courts discovered that one insurer "engaged in a deliberate program of bad faith denial of meritorious benefit claims."[5] Despite the discovery of such wrongdoing, scholars say government officials continue to "abdicat[e] their duty to supervise" insurers.[6]

---

[3] *See* John H. Langbein, *Trust Law As Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials Under ERISA*, 101 Nw. U. L. Rev. 1315 ([2007](#)).

[4] Dana M. Muir, *Decentralized Enforcement to Combat Financial Wrongdoing in Pensions: What Types of Watchdogs Are Necessary to Keep the Foxes Out of the Henhouse?*, 53 Am. Bus. L.J. 33, 96 ([2016](#)).

[5] Langbein, *supra* n. 3 at 1318.

[6] *See* Lauren R. Roth, *A Failure to Supervise: How the Bureaucracy and the Courts Abandoned Their Intended Roles Under ERISA*, 34 Pace L. Rev. 216, 219 ([2014](#)); *see also* Jay M. Feinman, *The Regulation of Insurance Claim Practices*, 5 UC Irvine L. Rev. 1319 ([2015](#)); Javier J. Diaz, *Illusory Rights Under the Arbitrary and Capricious Standard: Adding Remedial Safeguards to the Judicial Standard of Review Beyond ERISA Denial of Benefits Claims*, 11 Seton Hall Circuit Rev. 392 ([2015](#)); Andrew Stumpff, *Darkness at Noon: Judicial Interpretation May Have Made Things Worse for Benefit Plan Participants Under ERISA Than Had the Statute Never Been Enacted*, 23 St. Thomas L. Rev. 221 ([2011](#)); David H. Webber, *The Use and Abuse of Labor's Capital*, 89 N.Y.U. L. Rev. 2106, 2189 ([2014](#)); *see also* Leslie Scism, *Fewer Stay Out in Private Disability Plans*, Wall St. J., [Apr. 7, 2013](#) (describing tactics used by insurers to deny claims); Government Accountability Office, *Private Pensions: Conflicts of Interest Can Affect Defined Benefit and Defined Contribution Plans*, GAO-09-503T ([2009](#)); Mary Walsh Williams, *Insurers Faulted as Overloading Social Security*, N.Y. Times, [Apr. 1, 2008](#).

This case is about Reliance Standard Insurance Company, one of the country's largest disability insurers. [7] The question the Court must address is whether Reliance's denial of disability benefits to Juanita Nichols was an abuse of discretion. The answer to that question reveals a decades-long pattern of arbitrary claim denials and other misdeeds, a pattern the Court must take into account when assessing Reliance's actions in this case.

## I

## Undisputed Facts

Juanita Nichols is 62 years old.[8] She says she has spent her life doing "one thing and one thing only,"[9] namely, working as a Hazard Analysis and Critical Control Points Coordinator at Peco Foods' chicken processing factory in Sebastopol, Mississippi.[10] Nichols' duties as Coordinator required her to "spend a minimum of twenty percent [of] her work day in processing areas."[11] Temperatures at the factory were kept at 8 degrees above freezing.[12]

---

[7] *See* Elizabeth Galentine, *Top Grossing Large-Group LTD Carriers*, EMPLOYEE BENEFIT ADVISER (Jan. 27, 2016).

[8] *Claim Report*, Docket No. 13-1 at 74.

[9] *Letter from Juanita Nichols*, Docket No. 13-1 at 229-30; *see also Claim Report*, Docket No. 13-1 at 74.

[10] *Peco Foods Job Description: HACCP Coordinator*, Docket No. 13-1 at 114.

[11] *Letter from Peco Foods Quality Assurance Manager*, Docket No. 13-1 at 231-32.

[12] *Independent Review of Dr. Sharon X. Xu,* Docket No. 13-1 at 261-68; *see also December 2016 Denial Letter*, Docket No. 13-1 at 93-94.

In 2016, Nichols was diagnosed with a host of circulatory system disorders including Raynaud's disease,[13] a condition that causes arteries to become "unduly reactive and enter spasm" when cold.[14] Doctors concluded that exposure to the cold could give Nichols serious circulatory problems, including gangrene.[15] Nichols was prescribed a treatment regimen that included "avoiding . . . working in an environment where there is exposure to the cold."[16] As a result, Nichols had to stop working at Peco.[17]

Nichols applied for long-term disability benefits through the insurance plan Peco had with Reliance.[18] Under that plan, Nichols qualified for benefits if "as a result of an Injury or Sickness [she] cannot perform the material duties of [her] Regular Occupation."[19] The plan defines "regular occupation" as "the occupation [a claimant] is routinely performing" at the time of disability onset.[20] To determine what that occupation is, Reliance says it "look[s] at [a claimant's] occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or specific locale."[21]

---

[13] *Independent Review of Dr. Sharon X. Xu,* Docket No. 13-1 at 261-68.

[14] OXFORD CONCISE MEDICAL DICTIONARY at 645 (9th ed. 2015).

[15] *Independent Review of Dr. Sharon X. Xu,* Docket No. 13-1 at 261-68.

[16] *Id.*

[17] *Id.; see also Claim Report*, Docket No. 13-1 at 33-74.

[18] *Claim Report*, Docket No. 13-1 at 33-74.

[19] *Reliance Policy Number LTD 114776*, Docket No. 13-1 at 1-31.

[20] *Id.*

[21] *Id.*

Reliance admits that Nichols' medical conditions prevent her from working in cold temperatures, and therefore prevent her from performing her current duties "in a factory where the temperatures are kept at 40 degrees."[22] However, one of Reliance's vocational experts determined that Nichols' occupation as it was performed in the national economy was "sanitarian," an occupation with duties that do not require exposure to cold temperatures.[23] Based on this determination, Reliance denied Nichols' application for disability benefits.[24]

Nichols asked Reliance to reconsider that denial, saying it raised the question of "whether your review procedures include blatantly ignoring the evidence on-hand" about her occupational duties.[25] Reliance says it "again consulted" its vocational experts, who reached the same conclusion as before: "[a]ny exposure to cold temperatures would be job-site specific," rather than a duty of her "regular occupation" as "[s]anitarian."[26] On that basis, Reliance denied Nichols' appeal.[27]

Nichols promptly filed this lawsuit against Reliance to challenge her denial under the Employee Retirement Income Security Act (also known as "ERISA").[28] The Act's purpose is, in

---

[22] *August 2016 Denial Letter*, Docket No. 13-1 at 83-86.

[23] *Id.*

[24] *Id.*

[25] *Letter from Juanita Nichols*, Docket No. 13-1 at 229-30.

[26] *December 2016 Denial Letter*, Docket No. 13-1 at 93-94.

[27] *Id.*

[28] *Complaint*, Docket No. 1.

part, to "protect" workers "by establishing standards of conduct" for those who manage their benefit plans.[29] The Act allows employees to "recover benefits due" under a covered plan,[30] like Pecos' plan with Reliance.[31]

Under that plan, Reliance had the right to both determine benefit eligibility and interpret the plan's terms.[32] Therefore, the Supreme Court says Nichols can only recover benefits under the Act if Reliance abused its discretion in denying her benefits.[33] Nichols claims Reliance abused that discretion by, among other things, "having erroneously concluded" that she could "perform the essential duties of her occupation."[34]

In the Fifth Circuit, an insurer "abuses its discretion when the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial."[35] The Supreme Court has held that such abuse of discretion review must "take account of . . . several different, often case-specific, factors,

---

[29] *Congressional Findings and Declaration of Policy*, 29 U.S.C. § 1001; *see also* James Wooten, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974: A POLITICAL HISTORY (2005).

[30] *Civil Enforcement*, 29 U.S.C. § 1132(a)(1).

[31] *Reliance Policy Number LTD 114776*, Docket No. 13-1 at 1-31.

[32] *Id.*

[33] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).

[34] *Complaint*, Docket No. 1 at 4, 7.

[35] *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quotation marks omitted).

reaching a result by weighing all [factors] together."[36] Furthermore, "a conflict of interest . . . *must be weighed* as a factor in determining whether there is an abuse of discretion."[37]

Given this "combination-of-factors method of review," the Fifth Circuit says that reviewing courts must not only check if an insurer "based its decision on substantial evidence," but "must [also] consider other factors," such as an insurer's "conflict of interest" and how the insurer "treat[ed]" any government determination about a claimant's disability.[38]

## II

### Abuse of Discretion Analysis

The record does not reflect any government determination about Nichols' disability.[39] Therefore, two factors are relevant to the Court's abuse of discretion analysis: whether Reliance's denial was supported by substantial evidence, and whether Reliance has a conflict of interest.

## A

### Did Reliance Base its Denial on Substantial Evidence?

No.

The Supreme Court says evidence is "substantial" when a "reasonable mind might accept" it to "support a conclusion."[40] Substantial evidence is thus a specific "quantity" of

---

[36] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008).

[37] *Id.* at 111 (quotation marks omitted and emphasis added).

[38] *Schexnayder,* 600 F.3d at 469-70.

[39] *Initial Telephone Interview*, Docket No. 13-1 at 75-76.

[40] *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938))

evidence.[41] The precise quantity is unclear, but it is more than the amount necessary to have a "suspicion" something is true.[42] A decision is supported by substantial evidence only when it is "justified by a fair estimate" of "the record as a whole."[43]

Reliance denied Nichols' application because an occupational review by one of its vocational specialists, Jody Barach, determined that exposure to cold temperatures was not among the "material duties" of Nichols' "regular occupation."[44] This conclusion is not based on a fair estimate of the record evidence.

Reliance's policy with Peco states that Nichols' "regular occupation" is defined by its duties as they are "normally performed in the national economy," rather than "the unique duties performed for a specific employer or specific locale."[45] Reliance admits that this definition of "regular occupation" is "close if not identical to the Fifth Circuit's interpretation of the term in *House v. Am. United Life Ins. Co*."[46] In that case, the Fifth Circuit held that an employee's "regular occupation" is defined by its duties as they are performed "in the general

---

[41] *Steadman v. S. E. C.*, 450 U.S. 91, 98 (1981).

[42] *See Dickinson,* 527 U.S. at 159; *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (quoting *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939)).

[43] *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 466, 488 (1951).

[44] *See December 2016 Denial Letter*, Docket No. 13-1 at 93-94.

[45] *Reliance Policy Number LTD 114776*, Docket No. 13-1 at 1-31.

[46] *Memo Supporting Motion for Summary Judgment*, Docket No. 18 at 7 (citing *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 454 (5th Cir. 2007)).

economy."[47] To determine what those occupational duties are, the Fifth Circuit says insurers must review the "specific duties of the employee's job, as described by the employer"; these specific duties are "relevant" because they "well illustrate" occupational duties.[48]

Nichols' specific job duties, as described by her employer, fell into three categories. Duties in the first required her to educate other employees in proper sanitary practice; such duties included "train[ing] quality assurance employees" in sanitary procedures.[49] Duties in the second category required Nichols to inspect meat products; such duties included "[p]hysically inspect[ing]" processed chicken for "bones," "feathers," "infection," "fat levels," and "bruising in excess."[50] Duties in the final category required Nichols to package and export meat products; such duties include "packaging and labeling products," and "provid[ing] all paperwork required for the export of product."[51] Thus, wherever Nichols' job was performed in the national economy, it would require her to perform sanitary-training duties, meat inspection duties, and meat packaging duties.

---

[47] *House*, 499 F.3d at 454.

[48] *See Burtch v. Hartford Life & Accident Ins. Co.*, 314 F. App'x. 750, 755 (5th Cir. 2009) (*citing Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389 (5th Cir. 2006)); *see also Kavanay v. Liberty Life Assur. Co. of Boston*, 914 F. Supp. 2d 832, 835 (S.D. Miss. 2012).

[49] *Peco Foods Job Description: HACCP Coordinator*, Docket No. 13-1 at 114.

[50] *Id.*

[51] *Id.*

Common sense says that an occupation involving inspection and packaging of meat products would require exposure to refrigeration and low temperatures. This common sense is reflected here. The plant where Nichols worked was kept near freezing.[52] It is also reflected in the Dictionary of Occupational Titles, the source Reliance used to define the duties of Nichols' regular occupation. While no single Title covers all three categories of Nichols' job duties, those that include meat inspection and meat packaging duties appear to require work in refrigerated environments.[53] Indeed, the Title that best captures Nichols' meat inspection and packaging duties – with duties like "[e]xamin[ing] carcasses to determine condition of meat" and putting "information" on "inspection tag[s]," "[s]tamps," and "date tags" to prepare "meat cuts" for "shipping . . . and . . . delivery" – has cold temperatures built into its name: "Cooler Room Worker (Meat Products)."[54]

In concluding that Nichols was able to perform the duties of her regular occupation, Barach's "occupation review" ignored both common sense and the record evidence.[55] That re-

---

[52] *Independent Review of Dr. Sharon X. Xu,* Docket No. 13-1 at 261-68; *see also December 2016 Denial Letter*, Docket No. 13-1 at 93-94.

[53] *See, e.g., Cooler Room Worker (Meat Products)*, Dictionary of Occupational Titles 525.687-022; *Poultry-Dressing Worker (Meat Products)*, Dictionary of Occupational Titles 079.117-018; *Laborer (Meat Products)*, Dictionary of Occupational Titles 529.687-130; *Supervisor, Tank House (Meat Products)*, Dictionary of Occupational Titles 525.132-014; *Supervisor, Poultry Processing (Meat Products)*, Dictionary of Occupational Titles 525.134-014.

[54] *Cooler Room Worker (Meat Products)*, Dictionary of Occupational Titles 525.687-022.

[55] *Vocational Opinion of Jody Barach*, Docket No. 13-1 at 272-73.

view is two pages long, and contains barely 100 words actually written by Barach.[56] Most of the review is copy-and-pasted text from the Dictionary of Occupational Titles and a doctor's review of Nichols' medical records.[57] Barach references no other sources, not even the official description of Nichols' job duties as written by her employer.[58]

Barach cites no evidence to support the determination that Nichols was "employed as a Sanitarian," with duties identical to those within the "Sanitarian (Any Industry)" Title.[59] Furthermore, that Title only captures one category of Nichols' core job duties, those involving sanitation training.[60] It does not include any meat inspection duties; instead, it merely has a vague duty to "[i]nspec[t] products . . . for conformity to federal and state sanitation laws and plant standards."[61] Most importantly, the Title includes no packaging duties, let alone any meat packaging duties.

There is no justification for fitting the square peg of Nichols' job into the round hole of "Sanitarian (Any Industry)." As many courts have recognized, it is "unreasonable" for a vocational expert to define occupational duties by relying exclu-

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.; see also Sanitarian (Any Industry)*, Dictionary of Occupational Titles 529.137-014.

[60] *Sanitarian (Any Industry)*, Dictionary of Occupational Titles 529.137-014.

[61] *Id.*

sively on a single Dictionary Title "that does not refer" to important job duties.[62] If no Dictionary Title covered Nichols' core job duties, Barach should have done what vocational experts often do: "blend [duties] of two different . . . Titles."[63] If that had happened, Barach would have incorporated the duties of a Title that involved exposure to cold temperatures.

True, Barach's conclusion about Nichols' occupation echoes that of another of Reliance's vocational specialists, Matthew Bolks, who conducted the occupational determination used to justify the initial, pre-appeal denial of Nichols' application.[64] However, Bolks' review suffers from the same fatal flaws as Barach's. It consists entirely of conclusory statements and boilerplate language pulled from the Dictionary of Occupational Titles, and it cites no support for the claim that Nichols' occupational duties were identical to those of "Sanitarian (Any Industry)."[65] Bolks' cursory review does not support a conclusion that Nichols could perform the material duties of her occupation.

---

[62] *Lasser v. Reliance Standard Life Ins. Co*, 344 F.3d 381, 387 n. 5 (3d Cir. 2003); *see also Kinstler v. First Reliance Life Ins. Co.*, 181 F.3d 243, 253 (2d Cir. 1999); *Popovich v. Metro. Life Ins. Co.*, 281 F. Supp. 3d 993, 1007 (C.D. Cal. 2017).

[63] *See Shahpazian*, 388 F. Supp. 2d at 1371; *see also Rucker v. Life Ins. Co. of N. Am.*, No. CIV.A. 10-3308, 2012 WL 956507, at *10 (E.D. La. Mar. 20, 2012); *Nelson v. Unum Life Ins. Co. of Am.*, 421 F. Supp. 2d 558, 569 (E.D.N.Y. 2006).

[64] *Compare August 2016 Denial Letter*, Docket No. 13-1 at 83-86 *with December 2016 Denial Letter*, Docket No. 13-1 at 93-94.

[65] *Vocational Opinion of Matthew Bolks*, Docket No. 13-1 at 192-95.

In sum, Reliance's denial of Nichols' was unsupported by any evidence, let alone substantial evidence.

## B

### Does Reliance Have a Conflict of Interest?

Yes.

Under its plan with Nichols' employer, Reliance both evaluates and pays benefits claims.[66] It "potentially benefits from every denied claim," and therefore is operating under a conflict of interest, as Reliance itself admits.[67] The Supreme Court has held that, when an insurer is "operating under a conflict of interest," that conflict "*must be weighed* as a factor in determining whether there is an abuse of discretion."[68] The question is how much weight the Court should give Reliance's conflict of interest.

As the Fifth Circuit has noted, the Supreme Court "avoided enunciating a precise standard for evaluation of the impact" of a conflict of interest in an abuse of discretion review.[69] However, the Supreme Court has stated that a conflict of interest "should prove more important" when "circumstances suggest a higher likelihood that it affected the benefits decision."[70] Such circumstances include when there is evidence

---

[66] *See Reliance Policy Number LTD 114776*, Docket No. 13-1 at 1-31.

[67] *Schexnayder,* 600 F.3d at 470 (quotation marks omitted); *Motion for Summary Judgment and Supporting Memo*, Docket No. 18 at 6.

[68] *Glenn*, 554 U.S. at 111-12 (quotation marks omitted and emphasis added).

[69] *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 311 (5th Cir. 2015).

[70] *Glenn*, 554 U.S. at 117.

that an insurer has a "history of biased claims administration."[71] Chief Justice Roberts has written that this evidence "can take many forms," and "may be shown by a pattern or practice of unreasonably denying meritorious claims."[72]

As an example of such a showing, the Chief Justice has cited a review of federal cases conducted by the United States District Court for the District of Massachusetts in *Radford Trust v. First Unum Life Ins. Co. of Am.*, which "reveal[ed] a disturbing pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics."[73] That review found 35 judicial opinions in the prior decade that criticized or reversed disability benefits decision by First Unum, including 19 opinions reversing a decision as an abuse of discretion or as arbitrary and capricious.[74]

The *Radford Trust* case review approach rejects, as the Fifth Circuit does, a "batting average" approach that merely "compare[s] the number of federal decisions reversing denials of benefits to the number of decisions affirming denials."[75] This is because any claims administrator is bound to make some

---

[71] *Id.*

[72] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 123 (2008) (Roberts, C.J., concurring in part).

[73] *Id.* (*citing Radford Trust v. First Unum Life Ins. Co. of Am.*, 321 F.Supp.2d 226, 247 (D. Mass. 2004)); *see also Aluisi v. Elliott Mfg. Co. Plan*, No. 104-CV-5373 AWI SMS, 2009 WL 565544, at *3-4 (E.D. Cal. Mar. 5, 2009); *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 137 (2d Cir. 2008).

[74] *Radford Trust*, 321 F. Supp. 2d at 247 n. 20.

[75] *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1029 (5th Cir. 2015) (citing *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 768 (7th Cir. 2010)).

wrong decisions. They are not, however, bound to engage in arbitrary denials, bad faith acts, and unscrupulous tactics.

Of course, as the Fifth Circuit has held, it is not enough for a case review to recite mere conclusory statements in prior judicial opinions that an insurer has a history of biased claims administration.[76] Furthermore, if a review discovers an insurer has taken "active steps to reduce potential bias and to promote accuracy" to end a pattern of wrongdoing, a court cannot find that insurer to have a history of biased claims administration.[77] In short, to establish such a history, a case review must find – as it did in *Radford Trust* – a significant number of cases that, when viewed together, describe an unmitigated pattern of arbitrary and wrongful decisions.

This Court has conducted a cumbersome review of judicial opinions addressing Reliance's behavior in disability cases.[78] That review found over 100 opinions in the last 21 years criticizing Reliance's disability decisions, including over 60 opinions reversing a decision as an abuse of discretion or as arbitrary and capricious.[79] These opinions are often scathing.

---

[76] *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 514 (5th Cir. 2013).

[77] *Id*. (*citing Glenn*, 554 U.S. at 117).

[78] The Court reviewed cases where either Reliance or First Reliance Standard Life Insurance Company were named defendants, as the latter company is a subsidiary wholly owned by Reliance that exists to allow Reliance to sell insurance in New York. *See Reliance Standard Life Insurance Company 2017 Annual Statement* (2018); "Who We Are," *Reliance Standard Website*, accessed Jun. 25, 2018.

[79] The Court discovered over 60 judicial opinions issued between 1997 and 2018 that found Reliance abused its discretion in making a disability benefits decision or made an arbitrary and capricious disability benefits decision. Those decisions include: *George v. Reliance Standard Life Ins.*

*Co.*, 776 F.3d 349, 354-56 (5th Cir. 2015) (reversing lower court affirmation of Reliance denial on an abuse of discretion standard, stating "[W]e have . . . been unable to locate any evidence that supports [Reliance's denial.]"); *Hoff v. Reliance Standard Life Ins. Co.*, 160 F. App'x 652, 654 (9th Cir. 2005) (affirming lower court's reversal of a denial under abuse of discretion standard, finding that Reliance had "an illogical interpretation of [a disability] policy and a corresponding failure to investigate the facts"); *Parke v. First Reliance Standard Life Ins. Co.*, No. CIV.99-1039(JRT/FLN), 2002 WL 31163129, at *7 (D. Minn. Sept. 25, 2002), *aff'd in relevant part*, 368 F.3d 999 (8th Cir. 2004) (Reliance "selected a [Dictionary of Occupational Titles entry] which classified plaintiff's job as sedentary despite clear evidence in the record that plaintiff's position was not sedentary"); *Wirries v. Reliance Standard Ins. Co.*, No. CV 01-565-E-MHW, 2005 WL 2138682, at *9-10 (D. Idaho Sept. 1, 2005), *aff'd sub nom. Wirries v. Reliance Standard Life Ins. Co.*, 247 F. App'x 870 (9th Cir. 2007) (Reliance relied on a "one paragraph report, based on a paper review . . . [and] erroneous information" written by a doctor "whose name has popped up in other reported cases involving Reliance"); *Joas v. Reliance Standard Life Ins. Co.*, 621 F. Supp. 2d 1001, 1010 (S.D. Cal. 2007), *aff'd*, 331 F. App'x 464 (9th Cir. 2009) (Reliance based denial on "an unreasonable interpretation" of plan language); *Lasser v. Reliance Standard Life Ins. Co.*, 146 F. Supp. 2d 619, 631-44 (D.N.J. 2001), *aff'd*, 344 F.3d 381 (3d Cir. 2003) ("Reliance has exhibited a level of care which . . . cannot be squared with the sensitive inquiry these important . . . cases require," noting its decision was based on a "failure to adduce reliable vocational evidence," "reasoning [that] is circular," having "misconstrued the concept of occupational disability," and at least one "fundamental error"); *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1327 (11th Cir. 2001) (affirming lower court reversal of denial under an arbitrary and capricious standard, finding no "reasonable basis" for Reliance's denial); *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 610-12 (6th Cir. 2016) (reversing previously affirmed denial under an arbitrary and capricious standard, finding Reliance had a "lack of a diligent and reasoned resolution—evidenced by failure to examine [a claimant], file review by health care professionals without the relevant skill set, failure to consult with [claimant's] treating physicians, and shifting explanations"); *Bradshaw v. Reliance Standard Life Ins. Co.*, 707 F. App'x 599, 607-10 (11th Cir. 2017) (reversing lower court and awarding benefits because "Reliance's decision to

deny [the] claim was unreasonable"); *McKay v. Reliance Standard Life Ins. Co.*, No. 1:06-CV-267, 2007 WL 2897870, at *7 (E.D. Tenn. Sept. 28, 2007), *aff'd*, 428 F. App'x 537 (6th Cir. 2011) (Reliance's "failure to further investigate" during a disability claim was "unreasonable and arbitrary"); *Marcin v. Reliance Standard Life Ins. Co.*, 138 F. Supp. 3d 14, 30 (D.D.C. 2015), *aff'd*, 861 F.3d 254 (D.C. Cir. 2017) (finding that Reliance performed "a selective review of the medical evidence," used a "mischaracterization" of the evidence, and exhibited "a failure to meaningfully engage" with the evidence); *Pemberton v. Reliance Standard Life Ins. Co.*, No. CIV. A. 08-86-JBC, 2010 WL 60088, at *2-5 (E.D. Ky. Jan. 5, 2010) (Reliance engaged in activity that "undermine[d] the integrity of its decision-making process"); *McDevitt v. Reliance Standard Life Ins. Co.*, 663 F. Supp. 2d 419, 423–24 (D. Md. 2009) (suggesting that Reliance became "blind or indifferent" to "the ultimate purpose of insurance . . is not to erect administrative barriers, increase transaction costs, or delay the payment of legitimate claims"); *Gatti v. Reliance Standard Life Ins. Co.*, No. CV01175-TUC-FRZ, 2006 WL 664422, at *5 (D. Ariz. Mar. 13, 2006) ("Reliance's non-medical personnel made *ipse dixit* conclusions about the DNA evidence that were unsupported by the record or by any medical evidence"); *Williams v. Grp. Long Term Disability Ins*., No. 05 C 4418, 2006 WL 2252550, at *6-7 (N.D. Ill. Aug. 2, 2006) (Reliance "acted unreasonably by failing to utilize the assistance of experts when their assistance was needed in evaluating [a disability] claim" and "failing to provide [the claimant] with adequate notice of its decision"); *Lederman v. Reliance Standard Life Ins. Co.*, No. 06-CV-00825-WYD-MEH, 2009 WL 3161835, at *8-11 (D. Colo. Sept. 30, 2009) (noting "additional circumstances suggesting bad faith," including Reliance trying to "defy an order of the Court" involving disability benefits, finding it "particularly troubling" that Reliance "did not provide [medical reviewers] with the complete record"); *Small v. First Reliance Standard Life Ins. Co.*, No. CIV.A. 02-3744, 2005 WL 486614, at *4-6 (E.D. Pa. Feb. 28, 2005) (Reliance "selectively interpreted [evidence] to opportunistically deny [a] claim" for "self-serving reasons," and performed an "inadequate assessment of [a claimant's] ability to perform the material duties of her job"); *Archuleta v. Reliance Standard Life Ins. Co.*, 504 F. Supp. 2d 876, 883-85 (C.D. Cal. 2007) (finding "abundant evidence" that Reliance's denial "was greatly impacted by its conflict of interest," including a "remarkable" "fail[ure] to investigate" and using a "vocational report [that] was

flawed"); *Kochenderfer v. Reliance Standard Life Ins. Co.*, No. 06-CV-620 JLS (NLS), 2009 WL 4722831, at *7-11 (S.D. Cal. Dec. 4, 2009) (noting that "[t]he evidence on which [Reliance] relied to support its position was substantially flawed and overwhelmingly outweighed by evidence to the contrary," citing numerous cases to show that Reliance "regularly retain[ed]" a medical expert with "an incentive to [make] outcomes in [Reliance's] favor" while being "on notice of this bias issue based on prior judicial criticism"); *Kaelin v. Tenet Employee Ben. Plan*, No. CIV.A.04-2871, 2007 WL 4142770, at *10 (E.D. Pa. Nov. 21, 2007) (finding "Reliance's [occupational] methodology to be unreasonable"); *Small v. First Reliance Standard Life Ins. Co.*, No. CIV.A. 02-3744, 2005 WL 486614, at *4 (E.D. Pa. Feb. 28, 2005) (finding that "Reliance selectively used medical information and . . . inadequately assessed [a claimant's] ability to perform the material duties of her job"); *Shore v. Painewebber Long Term Disability Plan*, No. 04-CV-4152 (KMK), 2007 WL 3047113, at *12 (S.D.N.Y. Oct. 15, 2007) ("[By] reflexively using the [Dictionary of Occupational Titles entry] for 'Educational Program Directors,' [Reliance] clearly ignored the actual duties of Plaintiff's job."); *Chambers v. Reliance Standard Life Ins. Co.*, No. 3:11-CV-459, 2013 WL 3712415, at *7 (S.D. Ohio July 12, 2013) ("Reliance cherry-picked the medical records . . . to support its termination [of] benefits"); *Buffaloe v. Reliance Standard Life Ins. Co.*, No. 5:99-CV-710-BR(3), 2000 WL 33951195, at *8 (E.D.N.C. Oct. 26, 2000) (Reliance "abused its discretion in failing to account for plaintiff's disabling back condition which is clearly supported by the record"); *McCloskey v. Reliance Standard Life Ins. Co.*, No. 02:03CV579, 2006 WL 1437171, at *9 (W.D. Pa. Mar. 16, 2006) ("Reliance chose to ignore the physical requirements [of a job] specifically set forth by [an] employer . . . and substituted the definitions set forth in the [Dictionary of Occupational Titles] . . . such classification [was] arbitrary."); *Smetana v. Reliance Standard Life Ins. Co.*, No. CIV.A. 01-CV-4339, 2003 WL 22594263, at *7 (E.D. Pa. Sept. 30, 2003) (Reliance "impermissibly used evidence that supported the denial of [] benefits, while failing to satisfactorily explain its rejection of evidence supporting an award"); *Rhodes v. First Reliance Standard Life Insurance Co.*, No. 3:10CV1289 VLB, 2011 WL 6936342, at *15 (D. Conn. Dec. 29, 2011) (Reliance's denials of a single claimant's applications "demonstrate a pattern of arbitrary and capricious decision making"); *Harper v. Reliance Standard Life Ins. Co.*, No. 07 C 3508, 2008 WL 2003175, at *8-10 (N.D. Ill. May 8, 2008) ("Reliance . . . incorrectly

based its denial . . . on . . . the wrong [Dictionary of Occupational Titles] job description that did not accurately describe [the claimant's] job."); *Castle v. Reliance Standard Life Ins. Co.*, 162 F. Supp. 2d 842, 861 (S.D. Ohio 2001) (Reliance "simply has not offered a reasoned explanation, based on the evidence" for a denial) (internal quotation marks omitted); *Pappas v. Reliance Standard Life Ins. Co.*, 20 F. Supp. 2d 923, 930-311 (E.D. Va. 1998) ("Reliance's denial of benefits is based on . . . unreliable, irrelevant evidence, [and] a misreading of the record . . . it is clear that Reliance put its own financial interest above its fiduciary duty"); *Miller v. Reliance Standard Life Ins. Co.*, No. 304CV7203, 2005 WL 1334645, at *6-7 (N.D. Ohio June 6, 2005) (Reliance's denial was "completely inconsistent" with the evidence); *White v. Reliance Standard Life Ins. Co.*, No. 1:05-CV-2149-WSD, 2007 WL 187939, at *10 (N.D. Ga. Jan. 22, 2007) (Reliance "did not [give claimant] a full and fair review"); *Slachta v. Reliance Standard Life Ins. Co.*, 444 F. Supp. 2d 544, 552 (D.S.C. 2006) (Reliance's denial "relie[d] upon mere assumptions"); *Ebert v. Reliance Standard Life Ins. Co.*, 171 F. Supp. 2d 726, 734-41 (S.D. Ohio 2001) ("The evidence on which [Reliance] relies as a basis to deny Plaintiff's claim amounts to a few sentences . . . taken entirely out of context," and that Reliance "ignores several key documents," "selectively extracted limited portions of [a] report to bolster its denial of the claim," and used a Dictionary of Occupational Titles that was "not similar to Plaintiff's actual job"); *Creasy v. Reliance Standard Ins. Co.*, No. CIV.A. 07-3789, 2008 WL 834380, at *4 (E.D. Pa. Mar. 26, 2008) (Reliance "improperly determined [claimant's] regular occupation"); *Diamond v. Reliance Standard Life Ins.*, 672 F. Supp. 2d 530, 537-38 (S.D.N.Y. 2009) (Reliance's denial featured "a number of procedural irregularities"); *Songer v. Reliance Standard Life Ins. Co.*, 106 F. Supp. 3d 664, 677 (W.D. Pa. 2015) (Reliance's denial was "fraught with procedural irregularities"); *Badawy v. First Reliance Standard Life Ins. Co.*, No. 04 CIV. 01619 (RJH), 2005 WL 2396908, at *12-13 (S.D.N.Y. Sept. 28, 2005) (Reliance made a denial "without full and fair consideration" of the evidence); *Rogers v. Reliance Standard Life Ins. Co.*, No. 14 C 4029, 2015 WL 2148406, at *8 (N.D. Ill. May 6, 2015); (finding "an absence of reasoning on Reliance's part") (internal quotation marks omitted); *Taylor v. Reliance Standard Life Ins. Co.*, 837 F. Supp. 2d 1194, 1207-10 (W.D. Wash. 2011); (Reliance "arbitrarily refused to credit [claimant's] objective evidence" and "failed to . . . engage in a meaningful dialogue with [claimant]"); *Lederman v. Analex Corp.*, No. CIV.A-06CV00825EWNMEH, 2007

WL 2701575, at *8-9 (D. Colo. Sept. 12, 2007) (Reliance "improperly denied [claimant] a full and fair review of her claim"); *MacLeod v. Reliance Standard Life Ins. Co.*, No. 09-CV-118-JD, 2010 WL 597005, at *8-10 (D.N.H. Feb. 18, 2010) (Reliance "credited without question" an "unreasonable" medical report); *Williams v. Reliance Standard Life Ins. Co.*, 164 F. Supp. 3d 1230, 1253 (D. Or. 2016) (Reliance "was unreasonable" in its misinterpretation of evidence); *Hann v. Reliance Standard Life Ins. Co.*, No. CIV.A. 1:09-2496, 2011 WL 1344516, at *9 (M.D. Pa. Mar. 18, 2011) (finding that, in "considering Reliance['s] conflict of interest," the company "strayed from the contract requirements to reduce the monthly benefit amount, which worked in Reliance['s] favor"); *Wernicki-Stevens v. Reliance Standard Life Ins. Co.*, 641 F. Supp. 2d 418, 427 (E.D. Pa. 2009) ("[T]he Court is unable to find that Reliance's decision to discontinue [disability] benefits was supported by sufficient evidence."); *Hardt v. Reliance Standard Life Ins. Co.*, 540 F. Supp. 2d 656, 663-34 (E.D. Va. 2008) ("In addition to relying on an incomplete record, Reliance's decision to deny benefits was also inadequate because it improperly rejected much of the evidence that [claimant] submitted."); *Connelly v. Reliance Standard Life Ins. Co.*, No. CIV.A. 13-5934, 2014 WL 2452217, at *5-7 (E.D. Pa. June 2, 2014) ("Reliance failed to conduct an in-person exam for a psychiatric disability, unreasonably relied upon the opinion of a non-treating physician, relied upon favorable parts while arbitrarily ignoring unfavorable parts of the notes and letters from [claimant's] treating physician and therapist, and changed its opinion regarding [claimant's] disability without any corresponding change in [claimant's] medical condition. . . . [Reliance's] selective reliance on only portions of [claimant's] evidence and almost total dependence on the opinion of one independent consultant who never personally examined [claimant] was unfair and unreasonable."); *Mason v. Reliance Standard Life Ins. Co.*, 2017 BL 92587, at 6 (D. Colo. Mar. 22, 2017) (Reliance's denial "appears to be based [in part] on pure speculation"); *Omasta v. Choices Benefit Plan, Reliance Standard Life Insurance Company*, 352 F. Supp. 2d 1201, 1210-12 (D. Utah 2004) ("Reliance . . . arbitrarily and capriciously discounted all of the clear and consistent evidence that [claimant] provided to show he was disabled; failed to follow its own medical reviewer's strong and repeated recommendations that it obtain all of [claimant's] available medical information; arbitrarily discounted the determination of the Social Security Ad-

ministration that [claimant] was completed disabled; arbitrarily discounted the opinions of all of his treating physicians that he was disabled; failed to allow [claimant] an opportunity to provide relevant medical information to the records reviewers; [] closed its record on appeal without notice to [claimant,] . . . Reliance created a skewed administrative record discounting all of the substantial evidence of Plaintiff's disability. . . . There is no other explanation for Reliance's discounting of all of the evidence of impairments and its failure to provide its experts with easily available information other than the decision was tainted by Reliance's own conflict of interest."); *Pickert v. Reliance Standard Life Ins. Co.*, No. 5:13-CV-2222-TMP, 2015 WL 12697726, at *9 (N.D. Ala. June 9, 2015) ("Reliance unreasonably ignored, disregarded, or cherry-picked multiple treating physicians' findings."); *Conrad v. Reliance Standard Life Ins. Co.*, 292 F. Supp. 2d 233, 237-38 (D. Mass. 2003) ("Reliance reached its decision to reject [the] claim in an unreasonable, and thus arbitrary and capricious, manner. The central problem with the decision is its heavy dependence on the two reports produced by Dr. Hauptman, [which] . . . betray a palpable bias in favor of rejecting the claim."); *McGuigan v. Reliance Standard Life Ins. Co.*, No. CIV.A. 02-7691, 2003 WL 22283831, at *5-10 (E.D. Pa. Oct. 6, 2003) ("[N]umerous actions by Reliance during the review of [the] claim suggest that bias and a conflict of interest influenced the decision to deny [the] claim for disability benefits. . . . There are numerous ways in which Reliance performed a self-serving, selective and incomplete review of [claimant's] medical records. . . . Reliance demonstrated an inattentive process in reviewing [the] claim. . . . Reliance's reasons for denying [the] claim were unreasonable."); *Kelly v. Reliance Standard Life Ins. Co.*, No. CIV.A. 09-2478 KSH, 2011 WL 6756932, at *1-11 (D.N.J. Dec. 22, 2011) ("[T]he Court considers Reliance's inherent conflict of interest, the questionable aspects of its pre-final decision making process, and, most importantly, three troubling aspects of Reliance's final review: (1) an inappropriately selective evaluation of the evidence, (2) the rejection of self-reported and subjective evidence while relying on a claimed lack of objective evidence, and (3) an absence of any substantive evaluation of material job duties and the claimant's ability to perform them. . . . Reliance had denied [the] claim by (1) relying on an incorrect job description . . . and (2) improperly defining 'regular occupation' generally as opposed to taking into account the actual job duties performed . . . Reliance relied heavily on

the submission of the Vocational Specialist. Neither the Vocational Specialist nor Reliance determined which duties were material duties of Kelly's job.") (internal citations omitted); *Brende v. Reliance Standard Life Ins. Co.*, No. 15-9711-JAR-TJJ, 2017 WL 4222982, at *11 (D. Kan. Sept. 22, 2017) ("Reliance's decision was unreasonable because it failed to consider Brende's actual job duties in defining her regular occupation. . . . These omissions are troubling."); *Freling v. Reliance Standard Life Ins. Co.*, 315 F. Supp. 2d 1277, 1290-96 (S.D. Fla. 2004) ("[Reliance's] reliance on the [Dictionary of Occupational Titles] was improper because the [Dictionary] classification chosen by [Reliance] did not reflect the character of [claimant's] job. . . [T]he decision was tainted by self-interest."); *Greene v. Reliance Standard Life Ins. Co.*, No. CIV.A.7:03 CV 00025, 2004 WL 2634416, at *2 (W.D. Va. Oct. 26, 2004) ("Reliance failed to accurately list [claimant's] actual duties; rather, they seem to have relied on exclusively the generic definition of 'salesperson' provided by the [Dictionary of Occupational Titles], never considering the crawling and climbing activities in which [claimant] regularly engaged. The court finds this misplaced reliance on the [Dictionary] definition to have been unreasonable [here], given the disparity between the [Dictionary] description of 'salesperson' and the reality of [claimant's] regular occupation."); *Nelson-Vander Zyl v. Reliance Standard Life Ins. Co.*, No. 4:08-CV-00221-JEG, 2009 WL 10665021, at *7-10 (S.D. Iowa Oct. 22, 2009) ("[Reliance] changes the applicable job definitions when doing so only serves [their] purposes. . . . Reliance's vocational rehabilitation specialist classified[claimant's] job within the [Dictionary of Occupational Titles] and did not evaluate her capacity to perform her occupation," and "ignore[d] occupational restrictions and other relevant evidence"); *Smith v. Reliance Standard Life Ins. Co.*, 350 F. Supp. 2d 993, 1000-02 (S.D. Fla. 2004) ("Reliance's interpretation of 'material duty' is also unreasonable. Not only does Reliance fail to consider Smith's duties in his regular occupation, as was reported to Reliance . . . on the claim forms, in favor of the general duties listed in the [Dictionary of Occupational Titles], but Reliance also fails to consider whether any of the duties listed in the [Dictionary] are 'material duties.' . . . Additionally, the statements relied on by Reliance [to deny the claim] were taken out of context."); *Sexton v. Grp. Long Term Disability Plan for Employees of Inmar Enterprises, Inc.*, No. 3:04CV2475, 2006 WL 559908, at *4-5 (M.D. Pa. Mar. 7, 2006) ("Instead of

determining the actual duties plaintiff performed, Reliance based its denial of benefits on the occupation as it exists in the general labor market. Accordingly, the decision to deny benefits is based upon inappropriate grounds, and is erroneous as a matter of law."); *Rodriguez v. Reliance Standard Life Ins. Co.*, No. 13-CV-1157 MCA/SCY, 2016 WL 6023826, at *7-9 (D.N.M. Feb. 3, 2016) (Reliance "encouraged [claimant] to apply for Social Security Disability benefits, hired a contractor to assist [claimant] in obtaining those benefits, and recovered for itself nearly all of the retroactive Social Security disability benefits [claimant] received. . . . [Reliance] initially took the position that [claimant] was disabled, but, after it recouped much of what it had paid [claimant] in initial long-term disability benefits out of [claimant's] award of retroactive Social Security Disability benefits, [Reliance] decided to further investigate and ultimately changed its position. . . . [Reliance] failed to consider pertinent evidence that [claimant] does not have the . . . 'education, training and experience' necessary to perform the work it identified.") (internal citations omitted); *Anderson v. Reliance Standard Life Ins. Co.*, No. CIV. WDQ-11-1188, 2013 WL 1190782, at *11 (D. Md. Mar. 21, 2013) ("The only credible evidence that Reliance had favoring terminating [claimant's] benefits was [a doctor's] peer review. Although it is not unreasonable for an insurer to rely on paper peer reviews, [the] report offered little information about [claimant's] condition other than its bare conclusion that he was capable of sedentary work. This is not substantial evidence for Reliance's [denial].") (internal citations omitted); *Mason v. Reliance Standard Life Ins. Co.*, No. 14-CV-01415-MSK-NYW, 2015 WL 5719648, at *10 (D. Colo. Sept. 30, 2015) ("Reliance's failure to properly weigh the evidence supplied by [claimant] warrants remand. . . . Reliance's dismissal of evidence of symptoms and limitations experienced by [claimant] during the Elimination Period was precursory.").

The Court also found judicial opinions reversing an erroneous disability decision by Reliance under a *de novo* standard of review, many of which criticize Reliance's claims handling process. These opinions include: *Cyr v. Reliance Standard Life Ins. Co.*, 525 F. Supp. 2d 1165, 1174-76 (C.D. Cal. 2007), *aff'd*, 448 F. App'x 749 (9th Cir. 2011) (Reliance's acts, including having "lost" a claimant's "entire administrative record," amounts to behavior that "reeks of bad faith"); *West v. First Reliance Standard Life Ins. Co.*, slip op. at 24-25 (C.D. Cal. Jul. 9, 2001); *Kinstler v. First Reliance Standard*

*Life Ins. Co.*, No. 96 CIV. 921 (PKL), 1997 WL 401813, at *8 n. 6 (S.D.N.Y. July 16, 1997), *aff'd*, 181 F.3d 243 (2d Cir. 1999) ("The Court would reach the same result even if the applicable standard of review were the more deferential arbitrary and capricious standard. [Reliance], by applying its own extreme interpretation of the term regular occupation and focusing its evaluation on the job title rather than the actual characteristics of plaintiff's occupation, imposed a standard not required by the plan's provisions or interpreted the plan in a manner inconsistent with its plain words.") (internal citations and quotation marks omitted); *Cothran v. Reliance Standard Life Ins. Co.*, No. CA 6:98-3489-20, 1999 WL 33987897, at *4 (D.S.C. Feb. 9, 1999), *aff'd*, 202 F.3d 257 (4th Cir. 1999) ("Reliance should classify mental disorders with more precision"); *Smith v. Reliance Standard Life Ins. Co.*, 322 F. Supp. 2d 1168, 1177-79 (D. Colo. 2004) (Reliance's "cherry picking among the findings of a treating physician raises questions about whether the [a disability] review was objective or was designed to substantiate the desired decision to limit benefits") (internal citations and quotation marks omitted); *Cabana v. Reliance Standard Life Ins. Co.*, No. ED CV 13-1741 GAF, 2014 WL 4793036, at *8 (C.D. Cal. Sept. 25, 2014) (Reliance used "conclusory findings" from an expert, which "are a thin reed upon which to base [a] termination of benefits"); *Jarillo v. Reliance Standard Life Ins. Co.*, No. 15CV2677-MMA (BLM), 2017 WL 1400006, at *8-11 (S.D. Cal. Apr. 19, 2017) (finding "troubling" behavior by Reliance, including use of "an incomplete medical file" and "shifting rationale" for denying benefits); *Gravalin v. Reliance Standard Life Ins.*, 592 F. Supp. 2d 1184, 1191–92 (D.N.D. 2009) (reversing under a *de novo* standard, while finding that "the decision of Reliance [to deny benefits], and its interpretation of the policies at issue, is also arbitrary and capricious"); *Parr v. First Reliance Standard Life Ins. Co.*, No. 15-CV-01868-HSG, 2017 WL 1364610, at *13 (N.D. Cal. Mar. 31, 2017) (noting that the "vocational evaluation relied upon by [Reliance] . . . was flawed," and that Reliance used "sparse and outdated [physical] surveillance" to justify a denial); *Dionida v. Reliance Standard Life Ins. Co.*, 50 F. Supp. 2d 934, 940-42 (N.D. Cal. 1999) ("Reliance collected detailed information regarding the duties of [a claimant's] job [but] there is no indication that Reliance compared those duties to the duties of the 'other occupations' [from the Dictionary of Occupational Titles] it relied on in denying her claim."); *Cochran v. Reliance Standard Life Ins. Co.*, No. ED-CV-

1602483JGBDTBX, 2018 WL 1725650, at *11-13 (C.D. Cal. Apr. 4, 2018) (Reliance used expert reports that "do not indicate what evidence supports [their] finding"); *Logue v. Reliance Standard Life Ins. Co.*, No. CIV. 01-264-B, 2002 WL 1211063, at *4 (D.N.H. June 4, 2002); *Jones v. Reliance Standard Life Ins. Co.*, No. 01 C 2735, 2003 WL 21730124, at *3 (N.D. Ill. July 24, 2003) ("The only doctor who concurred with [a non-disabled] finding was [the] doctor hired by Reliance . . . who never examined [the claimant.]"); *Campos v. Reliance Standard Life Ins. Co.*, No. 215-CV-08304ODWGJSX, 2017 WL 1370691, at *5 (C.D. Cal. Apr. 12, 2017); *Cecil v. Reliance Standard Life Ins. Co.*, No. 7:05CV00003, 2005 WL 2291225, at *10 (W.D. Va. Sept. 19, 2005) (Reliance's refusal to "consider" evidence denied a claimant "a full and fair review of her claim"); *Watson v. Reliance Standard Life Ins. Co.*, No. 14 C 4990, 2017 WL 5418768, at *11 (N.D. Ill. Nov. 14, 2017) (Reliance used "misguided" and "[im]plausible" interpretations of evidence); *Wallace v. Beaumont Healthcare Employee Welfare Benefit Plan*, No. CV 16-10625, 2017 WL 4987675, at *7 (E.D. Mich. Nov. 2, 2017) ("A remand simply would afford Reliance the chance . . . to dig up new evidence to support a different reason for denying [the claimant's disability] claim."); *Druhot v. Reliance Standard Life Ins. Co.*, No. 16-CV-2053, 2017 WL 4310653, at *12 (N.D. Ill. Sept. 28, 2017) (Reliance's behavior during a denial "smacks of bad faith"); *Vaughan v. Reliance Standard Life Ins. Co.*, 2017 BL 312177, 9 (D. Ariz. Sept. 01, 2017) (Reliance "hastily rejected – or perhaps ignored entirely – [claimant's] evidence").

Finally, the Court found many other judicial opinions criticizing Reliance's claims handling process. These opinions include: *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1182 (10th Cir. 2000) (affirming lower court's "determination that Reliance misinterpreted the terms of a long term disability policy and thereby underpaid . . . benefits due under the policy"); *O'Bryhim v. Reliance Standard Life Ins. Co.*, 997 F. Supp. 728, 733 (E.D. Va. 1998), *aff'd*, 188 F.3d 502 (4th Cir. 1999) (describing "bad faith on the part of Reliance" during benefits determination); *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393 (3d Cir. 2000), *as amended* (Jul. 19, 2000) (finding the evidence "support[s] the view that whenever it was at a crossroads, Reliance . . . chose the decision disfavorable to [claimant]"); *Weinberger v. Reliance Standard Life Ins. Co.*, 54 F. App'x 553, 556 (3d Cir.

2002) (criticizing Reliance for "inappropriate" use of the Dictionary of Occupational Titles while ignoring "a job description setting forth the actual requirements of [the claimant's] position"); *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 386 (3d Cir. 2003) (finding it "unreasonable for Reliance to define 'regular occupation' differently from its plain meaning"); *Shahpazian v. Reliance Standard Life Ins. Co.*, 388 F. Supp. 2d 1368, 1379 (N.D. Ga. 2005) (describing Reliance's "extreme" and "unreasonable" occupation determination methodology, which included an "enslaved dependence" on the Dictionary of Occupational Title's occupational descriptions "despite the fact that these descriptions, individually or when blended, did not reflect certain material duties of [claimant's] position. Its rigid reliance on the generic [Dictionary] descriptions, even if multiple descriptions are blended, requires, in circumstances like these, pounding square pegs into round holes"); *Hann v. Reliance Standard Life Ins. Co.*, No. 09-CV-2496, 2011 WL 1344502, at *4 (M.D. Pa. Apr. 8, 2011) (Reliance took "arbitrary and capricious . . . action that was clearly inconsistent with the unambiguous terms of the contract . . . to reduce [disability] benefit amount, which quite clearly worked to [Reliance's] own benefit"); *Wilkerson v. Reliance Standard Life Ins. Co.*, No. CIV. A. 99-4799, 2001 WL 484126, at *1 (E.D. Pa. Mar. 6, 2001) ("In my view . . . [Reliance's] denial decision may very well have been tainted by self-interest, and may have been erroneous. Arguably, the defendant was quite selective in its reading of the medical reports."); *Friess v. Reliance Standard Life Ins. Co.*, 122 F. Supp. 2d 566, 574-75 (E.D. Pa. 2000) ("Reliance may have conducted an unreasonably lax investigation into [a disability] claim" and "may have used [evidence] selectively."); *Cyr v. Reliance Standard Life Ins. Co.*, No. CV 06-01585DDPRCX, 2008 WL 7095148, at *13 (C.D. Cal. Jan. 16, 2008), *aff'd*, 448 F. App'x 749 (9th Cir. 2011) (awarding prejudgment interest in a benefits recovery case because of Reliance's "obfuscation and delay tactics," which prevented a claiming from "receiv[ing] her benefits a long time ago"); *Combs v. Reliance Standard Life Ins. Co.*, No. 2:08CV102, 2009 WL 2902943, at *4-5 (S.D. Ohio Sept. 8, 2009) ("[T]he Court is concerned that [Reliance's] decision to deny Plaintiff benefits was not the result of a deliberate, principled, reasoning process."); *Feggins v. Reliance Standard Life Ins. Co.*, No. 11-CV-073-WMC, 2012 WL 12996107, at *9 (W.D. Wis. Jan. 19, 2012) (finding that Reliance's occupational review "appears to have effectively undercut plaintiff's ability to make her case and build a complete record of evidence for this court

Judges describe the behavior underlying Reliance's claims administration as "arbitrary," "blind," "conclusory," "extreme," "flawed," "fraught," "illogical," "inadequate," "inappropriate," "incomplete," "indifferent," "lax," "misguided," "opportunisti[c]," "precursory," "questionable," "remarkable,"

---

to review"); *Sim v. Reliance Standard Life Ins. Co.*, No. 1:15-CV-390, 2016 WL 319868, at *4 (S.D. Ohio Jan. 26, 2016) (Reliance issued a denial despite "Social Security Administration's finding that plaintiff was totally disabled," which was "evidence suggestive of bias"); *Buffkin v. Reliance Standard Life Ins. Co.*, No. 3:16-CV-21/MCR/CJK, 2017 WL 2903345, at *10 (N.D. Fla. Mar. 31, 2017) ("Reliance failed to engage in ongoing, good faith communications with [a disability claimant] to keep him informed of the process."); *Fitzgerald v. Long-Term Disability Plan of Packard's on the Plaza, Inc. and Reliance Standard Life Insurance Co.*, No. 11-CV-956 JEC/ACT, 2013 WL 12178732, at *6 (D.N.M. Apr. 4, 2013) ("Reliance failed" to "process [a disability] appeal" in accordance with federal law); *Senegal v. Reliance Standard Life Ins. Co.*, No. CV 16-1961, 2017 WL 175768, at *5 (E.D. La. Jan. 17, 2017) (Reliance violated the Employee Retirement Income Security Act's procedural requirements); *Am. Soc'y for Technion-Israel Inst. of Tech., Inc. v. First Reliance Standard Life Ins. Co.*, No. 07 CIV. 3913 (LBS), 2009 WL 2883598, at *5 (S.D.N.Y. Sept. 8, 2009) (summarizing evidence suggesting that Reliance "violat[ed its] internal policy and procedure on review of claims"); *Sunderlin v. First Reliance Standerd Life Ins. Co.*, 235 F. Supp. 2d 222, 227-30 (W.D.N.Y. 2002) (noting "with strong disapproval" a "misstatement" by Reliance that it had "created a claim file" after it "lost" that file and had "miscalculated the amount owed"); *Kochenderfer v. Reliance Standard Life Ins. Co.*, No. 06-CV-620 JLS(NLS), 2010 WL 1912867, at *2 (S.D. Cal. Apr. 21, 2010) ("[Reliance's] work was fraught with a lack of diligence and other miscues, such as failing to consider all of the available evidence" when denying a claim); *Montoya v. Reliance Standard Life Ins. Co.*, No. 14-CV-02740-WHO, 2016 WL 5394024, at *13 (N.D. Cal. Sept. 27, 2016) ("Reliance erred and acted unreasonably" in its "rely[ing] solely" on the Dictionary of Occupational Titles to determine material duties).

"selective," "self-serving," "skewed," "tainted," "troubling," "unfair," "unreasonable," and "unreliable."[80]

These opinions reveal that Reliance takes a range of extraordinary steps to deny claims for disability benefits. Reliance makes "unreasonable" interpretations of benefit plan language, going so far as to "misconstru[e] the concept of occupational disability."[81] Reliance "selectively interpret[s]" evidence so it can "opportunistically deny [a] claim" for "self-serving reasons,"[82] creating a "skewed administrative record discounting all of the substantial evidence of . . . disability."[83] Reliance's denials are "overwhelmingly outweighed by evidence to the contrary," "fraught with procedural irregularities," and "blind or indifferent."[84] Those denials "rel[y] upon mere assumptions" and "demonstrate a pattern of arbitrary and capricious decision making."[85] Reliance uses "obfuscation and delay tactics," "fail[s] to engage in ongoing communications with [claimants] to keep [them] informed of the process," makes "misstatement[s]" to claimants, "miscalculate[s] the amount owed," and generally exhibits behavior that

---

[80] *See generally id.*

[81] *See Hoff*, 160 F. App'x at 654; *Joas*, 621 F. Supp. 2d at 1010; *Lasser*, 146 F. Supp. 2d at 631-44; *Kinstler*, 1997 WL 401813, at *8 n. 6.

[82] *See Small*, 2005 WL 486614, at *4-6.

[83] *See, e.g., Omasta*, 352 F. Supp. 2d at 1210-12.

[84] *Songer*, 106 F. Supp. 3d at 677; *McDevitt*, 663 F. Supp. at 423–24; *Lederman*, 2009 WL 3161835, at *8-11; *Kochenderfer*, 2009 WL 4722831, at *7-11; *Rhodes*, 2011 WL 6936342, at *15; *Slachta*, 444 F. Supp. 2d at 552.

[85] *Id.*

"reeks of bad faith."[86] Reliance "regularly retain[s]" experts with "an incentive to [make] outcomes in [their] favor," and uses expert reports that "betray a palpable bias in favor of rejecting the claim."[87] Despite being "[put] on notice of this bias issue" by "prior judicial criticism," Reliance still tells courts that "it does not choose . . . third-party contractor[s] based on the outcomes."[88] Courts often conclude that Reliance's denials are "greatly impacted" by "self-interest," making it "clear that Reliance put[s] its own financial interest above its fiduciary duty."[89]

Courts reviewing Reliance's behavior have long highlighted the specific wrong alleged by Nichols: the arbitrary determination of a claimant's occupation. Reliance's occupational determination methodology has been derided as "extreme," "far too blunt," "troubling," and "unreasonable."[90] Reliance's experts make occupational determinations "without regard to

---

[86] *Cyr*, 2008 WL 7095148, at *13; *Buffkin*, at *10; *Sunderlin*, 235 F. Supp. 2d at 227-30 (W.D.N.Y. 2002); *Kochenderfer*, 2010 WL 1912867, at *2; *Cecil*, 2005 WL 2291225, at *10; *Cyr*, 525 F. Supp. 2d at 1174-76.

[87] *See Conrad*, 292 F. Supp. 2d at 237-38; *Kochenderfer*, 2009 WL 4722831, at *7-11.

[88] *Compare Kochenderfer*, 2009 WL 4722831, at *7-11 *with Fessenden v. Reliance Standard Life Ins. Co.*, No. 3:15CV370-PPS, 2018 WL 461105, at *5 (N.D. Ind. Jan. 17, 2018).

[89] *Freling*, 315 F. Supp. 2d at 1290-96; *Archuleta*, 504 F. Supp. 2d at 883-85; *Pappas*, 20 F. Supp. 2d at 930-311 (E.D. Va. 1998); *Lasser*, 130 F. Supp. 2d at 624.

[90] *See Brende*, 2017 WL 4222982, at *11; *Shahpazian*, 388 F. Supp. 2d at 1379; *Lasser*, 130 F. Supp. 2d at 624.

the importance of [job] duties."[91] Their reports "fai[l] to engage in any meaningful analysis of . . . material job duties,"[92] and "offe[r] little information . . . other than [a] bare conclusion [that] is not substantial evidence."[93]

Reliance may be justified in its use of the Department of Labor's Dictionary of Occupational Titles, which the Fifth Circuit says "represents extensive fact gathering and detailed data analysis" about the "material duties" of various occupations.[94] However, the *way* Reliance uses the Dictionary has been deeply criticized by courts. Reliance has been admonished for "reflexively using" the Dictionary while having "clearly ignored the actual duties of [a claimant's] job."[95] Reliance "assume[s] the tasks listed in the selected [Dictionary] classifications defin[e a claimant's] material duties," despite the "disparity" between a classification "and the reality of [claimant's] regular occupation."[96] In doing so, Reliance will "incorrectly bas[e] its denial [on] the wrong [Dictionary] job description."[97] In the words of one court, "Reliance, by applying its own extreme interpretation of the term regular occupation and focusing its evaluation on the job title rather than

---

[91] *Smith,* 350 F. Supp. 2d at 1000.

[92] *Kelly,* 2011 WL 6756932, at *11.

[93] *Anderson,* 2013 WL 1190782, at *11.

[94] *See Robinson v. Aetna Life Ins. Co.,* 443 F.3d 389, 394-95 (5th Cir. 2006).

[95] *Shore,* 2007 WL 3047113, at *12.

[96] *Freling,* 315 F. Supp. 2d at 1290-96; *Greene,* 2004 WL 2634416, at *2.

[97] *McCloskey,* 2006 WL 1437171, at *9; *Harper,* 2008 WL 2003175, at *8-10.

the actual characteristics of plaintiff's occupation . . . interpret[s] the plan in a manner inconsistent with its plain words."[98]

Courts have singled out the vocational expert involved in Nichols' appeal, Jody Barach, for using a particularly cursory methodology.[99] Barach creates "paper-reviews reports" instead of assessing claimants in person.[100] These reports are typically "two page[s]" that amount to "a copied bulleted list of job responsibilities," "copied portions" of medical reports, and "conclusory remarks" regarding occupational classification.[101] Barach's reports may "refer to a [claimant's] position by the wrong title," "reject [a claimant's] description of [their] job duties," and omit "which duties were material duties."[102] Reliance's tendency to give "greater weight" to Barach's findings when they support a denial has led at least one court to allow bias-related discovery.[103] Courts say Barach's methodology "effectively undercut[s a claimant's] ability to make her case" for benefits."[104] Despite these findings, Reliance has

---

[98] *Kinstler*, 1997 WL 401813, at *8 n. 6.

[99] *See, e.g., Kelly*, 2011 WL 6756932, at *6; *Feggins*, 2012 WL 12996107, at *9.

[100] *Kelly*, 2011 WL 6756932, at *6.

[101] *Id.* at *10.

[102] *Id.*

[103] *See, e.g., Austin-Conrad v. Reliance Standard Life Ins. Co.*, No. CV 4:10CV-00127-JHM, 2015 WL 4464103, at *5 (W.D. Ky. July 21, 2015).

[104] *Feggins*, 2012 WL 12996107, at *9.

continued to use Barach's reports to deny claims across the country.[105]

Reliance's wrongful claims-related behavior is not a localized problem. Courts in every federal circuit have repeatedly criticized the insurer's claims management practices.[106] Even the Supreme Court has cited a finding that "Reliance's decision to deny [a claimant] long-term disability benefits was not based on substantial evidence."[107]

Furthermore, despite discussing its conflict of interest in its briefing, Reliance has submitted no evidence that it has taken steps to mitigate that conflict.[108] As one court has previously found, Reliance "has not demonstrated that it took any other procedural safeguards such as walling off claims administrators or imposing management checks."[109] Whatever safeguards Reliance has imposed (if any) have not been enough, as judges have continued to criticize Reliance's claims practices well into the present.[110]

---

[105] *See, e.g., Balmert v. Reliance Standard Life Ins. Co.*, No. 2:07-CV-95, 2008 WL 4404299, at *6 (S.D. Ohio Sept. 23, 2008); *Dimery v. Reliance Standard Life Ins. Co.*, No. C 10-00481 JSW, 2012 WL 1067409, at *6 (N.D. Cal. Mar. 28, 2012); *Galuszka v. Reliance Standard Life Ins. Co.*, No. 2:15-CV-241, 2017 WL 78889, at *16 (D. Vt. Jan. 9, 2017).

[106] *See supra* n. 79.

[107] *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 248 (2010) (quoting *Hardt,* 540 F. Supp. 2d at 663).

[108] *Motion for Summary Judgment and Supporting Memo*, Docket No. 18 at 6-7.

[109] *See Rhodes,* 2011 WL 6936342, at *17.

[110] *See Cochran,* 2018 WL 1725650 at *11-13.

In sum, the judicial record establishes an unmitigated pattern of arbitrary and wrongful behavior by Reliance. The insurer indisputably has a history of biased claims administration.

## C

### Did Reliance Abuse its Discretion by Denying Nichols Benefits?

Yes.

The fact that Reliance's decision to deny Nichols benefits was devoid of evidentiary support is enough to prove that the decision was an abuse of discretion. Reliance's long past of biased and wrongful claims denials in defiance of countless judicial warnings – a past marked by the same faulty occupation determination process that drove Nichols' denial – simply underscores this conclusion.[111] To be clear, "[t]he mere fact" that a conflict of interest exists "does not necessarily tip a close case in a plan member's favor."[112] However, on the record before the Court, this case is far from close.

Reliance's motion for summary judgment is therefore DENIED, and its decision to deny Nichols benefits is REVERSED.

## III

### Remedies

The Employee Retirement Income Security Act allows Nichols to "recover accrued benefits," "obtain a declaratory judgment that she is entitled to [future] benefits," and receive an

---

[111] *Schexnayder,* 600 F.3d at 470-71.

[112] *Leipzig v. Prinicpal Life Ins. Co.,* 707 F.Supp.2d 685, 694 (N.D. Tex. 2010)

"award of attorney's fees."[113] Nichols has requested all three of these remedies.[114]

The Fifth Circuit says a court should "award benefits" under the Act to a claimant "where the record establishes that the plan administrator's denial of the claim was an abuse of discretion."[115] Such is the case here. Further, there is good reason why remand in this case is unwise.[116] As one court cautioned, "remand simply would afford Reliance the chance . . . to dig up new evidence to support a different reason for denying [a] claim."[117] Nichols is entitled to an award for past benefits and an order requiring Reliance to pay her benefits in the future.

Regarding an attorney's fee award, the Fifth Circuit says a court must address the following "nuclei of concerns" in deciding whether such an award is appropriate under the Act:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether

---

113 *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (*citing Civil Enforcement*, 29 U.S.C. § 1132(g)).

114 *Complaint*, Docket No. 1.

115 *Lafleur v. Louisiana Health Serv. & Indem. Co.*, 563 F.3d 148, 158 (5th Cir. 2009) (*quoting Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008)).

116 *See* Mark D. DeBofsky, *A Critical Appraisal of the Current State of ERISA Civil Procedure - an Examination of How Courts Treat "Civil Actions" Brought Under the Employee Retirement Income Security Act*, 18 EMP. RTS. & EMP. POL'Y J. 203, 235 (2014).

117 *Wallace*, No. CV 16-10625, 2017 WL 4987675, at *7.

the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an [Act-covered] plan or to resolve a significant legal question regarding [the Act] itself; and (5) the relative merit of the parties' positions.[118]

Together, these factors weigh in favor of awarding Nichols a reasonable attorney's fee. Reliance has a severe degree of culpability and the financial ability to satisfy an attorney's fee award. Such an award would have some deterrent effect on Reliance and other insurers. While Nichols' suit was not brought to benefit other employees, her position has far greater merit than Reliance's. Therefore, within 14 days, Nichols shall file a properly supported motion for attorney's fees.[119] However, the Court does not expect this matter to devolve into satellite litigation over fees.[120] Nichols has suffered long enough because of the wrongful denial of her benefits.

Many courts have, after recounting Reliance's abuses, ordered the insurer to pay benefits and attorney's fees. Apparently these costs have not caused Reliance to change course, as it has spent decades ignoring them with impunity – perhaps treating them as the price of doing business. In future

---

[118] *Schexnayder*, 600 F.3d at 471 (internal citations and quotation marks omitted).

[119] *See George*, 776 F.3d at 356 ("The court may also consider whether [a claimant] is entitled to other relief, including prejudgment interest.")

[120] *See Depriest v. Walnut Grove Corr. Auth.*, 3:10-CV-663-CWR-FKB, 2018 WL 1958285, at *3 (S.D. Miss. Apr. 25, 2018) ("The Supreme Court encourages parties to settle the amount of a fee, and warns that the question of reasonable fees should not result in a second major litigation.") (quotation marks omitted).

cases, courts may be asked to order further relief to curb Reliance's perceived abuses. That relief can be quite broad.[121]

Reliance has also moved to dismiss Nichols' alternative claim for breach of fiduciary duty. That claim "sought no different relief . . . than that available under [her] claim for benefits."[122] Nichols' claim for breach of fiduciary duty is indistinguishable from her claim for benefits, and therefore must be dismissed.[123]

SO ORDERED, this the 29th day of June, 2018.

s/ CARLTON W. REEVES
*United States District Judge*

---

[121] *See CIGNA Corp. v. Amara*, 563 U.S. 421, 438-45 (2011); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 223 (2004) (Ginsberg, J., concurring).

[122] *Galutza v. Hartford Life & Acc. Ins. Co.*, No. 05-CV-58-GKF-PJC, 2008 WL 2433837, at *3 (N.D. Okla. June 12, 2008) (discussing *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604 (5th Cir. 1998)).

[123] *Tolson*, 141 F.3d at 610-11; *see also Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 736-37 (5th Cir. 2014).